## Case No. 944.

### BANK OF THE UNITED STATES v. WINSTON et al.

[2 Brock. 252.][1]

Circuit Court, D. Virginia. May Term, 1825.

JUDGMENT LIEN—SUBROGATION.

1. The lien on lands created by a judgment is given by the statute, which authorizes an elegit, and the lien depends upon the right to sue out an elegit.

[Cited in Shrew v. Jones, Case No. 12,818; Re Boyd, Id. 1,746; Massingill v. Downs, 7 How. (48 U. S.) 765; Morsell v. First Nat. Bank, 91 U. S. 360.]

[See U. S. v. Morrison, 4 Pet. (29 U. S.) 124; Burton v. Smith, 13 Pet. (38 U. S.) 464.]

2. Where money is paid by a surety for his principal, the surety is subrogated to all the rights of the creditor whose debt he has discharged. But quaere—Is this ever done in favour of a person not bound by the original security, who discharges it as a volunteer?

[Cited in Dooley v. Virginia Fire & Marine Ins. Co., Case No. 3.999.]

3. The lien of a judgment on which execution is stayed, dates, not from the rendition of the judgment, but from the time when execution may be sued out. Scriba v. Deanes, [Case No. 12,559.]

[Suit by the Bank of the United States against Winston's executors and others.]

MARSHALL, Circuit Justice.—This is an application on the part of Pleasant Winston, to be allowed the sum he has paid the commonwealth as surety for George Winston, on a judgment obtained by the commonwealth.

In the year 1818, the commonwealth of Virginia obtained a judgment against George Winston, for the sum of $17,999.24. No execution has ever issued on this judgment. Soon after its rendition, an act was passed directing that execution should be delayed, on George Winston's giving sufficient surety for the payment of the debt by instalments.

[1] [Reported by John W. Brockenbrough, Esq.]

In pursuance of this act, bonds for the whole amount were executed, with Pleasant Winston as surety. Before the first instalment became due, judgments were obtained by the Bank of the United States, and by several other creditors, against George Winston. He made a deed of his property for the payment of his debts, giving priority to the debt due to the state of Virginia, which has been set aside by a decree of this court as fraudulent. It being understood that the commonwealth asserted a lien on this property, under its original judgment, and also under the deed, and the commonwealth having declined becoming a party to the suit in this court, no sale was ordered, but the marshal was directed to receive the rents and profits, and to hold them subject to the order of the court. Afterwards, in the year 1824, the commonwealth instituted suit on the bonds given by Pleasant and George Winston, and obtained judgments, some of which have been paid by Pleasant Winston. He claims to stand in the place of the commonwealth, and to be paid his debt before those creditors who obtained judgments in the intervening time between the original judgment of the state against George Winston and the subsequent judgments against George and Pleasant Winston. He contends that the lien created by the original judgment still continues; that by paying a subsequent judgment on a bond given in consideration of the first, he is to be considered as having paid so much in discharge of the first, and, consequently, to be entitled to a preference over the other creditors. This claim is resisted by the other creditors on various grounds, some of which will be considered.

As the lien created by a judgment is given by the statute which authorizes an elegit, it is settled in this country that the lien depends on the right to sue out an elegit. [Eppes v. Randolph,] 2 Call, 125; 4 Hen. & M. 57.[2] This is not controverted; but it is insisted by Pleasant Winston that the commonwealth may now sue out an elegit, on the original judgment against George Winston, and that he is entitled to the priority which that right gives to the commonwealth. When this idea was first suggested, it occurred to me, and I stated to the bar, that the doctrine of subrogation or substitution was confined to sureties, and had never been applied to a mere volunteer. If an assignable instrument be transferred, its obligation

[2] Nimmo's Ex'r v. Com. And however long the judgment may have been out of date, there is no doubt that, if susceptible of being revived at all, the lien upon the land, yet in the hands of the debtor, would be revived eodem flatu. Tucker, P., in Watts v. Kinney, 3 Leigh, 293. And where there are two judgments, and a surety, bound by the eldest judgment, pays it off, although the lien of the judgment is gone at law, equity will substitute him in the place of the creditor whose debt he has paid, and give him the benefit of his lien. The equity of the surety is superior to that of the second incumbrancer. Id.

at law and equity remains. If a security not assignable, be discharged by a surety whom it binds, equity keeps it in force in his favour, and puts such surety in the place of the original creditor. But I think there is no case in which this has been done in favour of a person not bound by the original security, who discharges it as a volunteer. I will not say that it may not be done, but if it may, equity will consider all the circumstances, and impose equitable terms. The decision of this point, is not, I think, essential to the cause.

Were it admitted that Pleasant Winston has a right to rank on the fund in the power of the court, according to the original judgment in favour of the commonwealth, the inquiry would be, whether that judgment is still a lien. The counsel for Pleasant Winston contend that it is:—1. Because the proceedings under that judgment, on the part of the commonwealth, do not amount to a stay of execution; 2. If they do, the execution may now issue, and will relate to the date of the judgment.

I shall not unnecessarily decide the first question. That may hereafter arise in a case which will depend entirely on it. I do not think this does. The second has already been decided in this court. In the case of Scriba v. Deanès, [Case No. 12,559,] this court determined that the lien of a judgment on which execution is stayed, dates, not from the time of its rendition, but from the time when execution may be sued out. I have not changed this opinion. If, then, Pleasant Winston could claim the lien created by the original judgment, his lien would be postponed to that of other creditors whose judgments were obtained before the expiration of the time, during which execution was suspended, unless it should be decided that the commonwealth could have sued out an elegit, notwithstanding the act of assembly under which the bonds were taken which bind Pleasant Winston. I have said that it is unnecessary to decide this point at present. My reason is this. I think it too clear for controversy, that the commonwealth, and those who claim under her, must abandon or abide by her original judgment. Equity cannot give all the advantages of both. If she, or her substitute, claim under the elegit, the party so claiming must be content with what the elegit will give. If, waiving the elegit, the commonwealth pursues her remedy on the bonds which she has taken, instead of her original judgment, and thereby obtains more than that judgment would yield, equity will not aid her in the attempt to come in under the original judgment also. Waiving every other objection to the claim of Pleasant Winston, this is insurmountable. The debt to the commonwealth is augmented by having recourse to the bonds which have been given in satisfaction of the judgment, and the fund for other creditors is diminished to the same amount, if she still claims

her priority. Equity will not, to effect such an object, tack that priority to the subsequent judgments which augment the debt. I think, then, if every other objection to the claim of Pleasant Winston could be removed, it must fail, unless he could comply with the condition a court of equity ought to impose, the reduction of the claim of the commonwealth to the amount of its judgment.

The following order was made in this cause: "This cause came on to be further heard on the papers formerly read, and was argued by counsel; on consideration whereof, the court is of opinion that it can take no cognizance of the question: whether the commonwealth of Virginia has a lien on the lands of George Winston in virtue of the judgment, alleged in the answer of Pleasant Winston to have been obtained by the commonwealth against the said George, on the 19th of June, 1818, for $19,999.24, in the general court of this commonwealth, and that until that question be decided, no decree ought to be made for the sale of the lands comprised in the deed of trust from George Winston to Charles J. Macmurdo and James Winston, dated 21st of August, 1820: liberty is therefore granted to any of the parties to this cause, to proceed in the courts of this state, in such manner as may be deemed proper, to obtain the decision of that question from the competent tribunal, without prejudice to the claim of such party or parties in this cause; and all parties in this cause are enjoined from pleading the pendency of this suit, or from alleging the same in bar of such proceeding."