# Seth Smith and another v. Luther Rumsey and others.

*Equity pleading and practice: Case made by the pleadings.* The rule that the court is to adjudge according to the case shown and issues raised by the pleadings is applied in this case.

*Fraudulent conveyances: Homestead.* The conveyance by a debtor of land which is exempt as a homestead from any coercive proceedings by his creditors, cannot operate to defraud his creditors, and is not within the statutory regulation which makes a debtor's disposal of property with intent to defraud creditors voidable at the instance of the creditors. *Herschfeldt v. George, 6 Mich., 456,* is modified and limited.

*Equity jurisprudence: Sureties: Security: Subrogation: Contribution: Parties.* Where after judgment and execution levy against sureties upon a bond, two of the sureties pay the judgment in full, but the levy against their co-surety is retained for their benefit, they may join in a bill in aid of the execution to remove conveyances made by such co-surety in fraud of such execution levy, to the end that it may be made available to them by way of subrogation to enforce contribution; though their claims for contribution are several, yet the levy being neither divisible nor apportionable, the relief sought, so far as it turns on the subjection and enforcement of this lien, is necessarily joint.

*Equity jurisprudence: Remedy at law.* The objection that the case is properly cognizable at law, and not in equity, is held not well founded.

SMITH *v.* RUMSEY.

*Co-sureties: Payment: Preserving the debt: Contribution: Security: Subrogation.* The payment of the judgment in such case by the two sureties, with the intent to avail themselves by way of subrogation of the lien of the execution against their co-surety to enforce contribution, would not operate in equity to annihilate the debt or destroy the force of the levy as between them and such co-surety; but a court of equity will keep the debt alive and preserve the security of the levy to the extent of the lawful claim for contribution as against the co-surety, and will enforce the right of subrogation.

*Fraudulent conveyance: Homestead: Decree.* Where a conveyance of land which embraces an undefined homestead interest and something besides, is assailed in equity as fraudulent as against creditors, the decree setting it aside as to so much as is not exempt as a homestead, should provide for an admeasurement and setting off of the homestead according to the situation and value at the date of such conveyance.

*Heard October 26.    Decided January 11.*

Appeal in Chancery from Clinton Circuit.

*Spaulding & Cranson* and *J. O. Selden,* for complainants.

*R. Strickland,* for defendants.

GRAVES, J:

Complainants and defendant Rumsey and one E. D. Tripp, on the 12th of April, 1871, became co-sureties on the township treasurer's bond of one Edward L. Smith, a son of complainant Smith, and this Edward L. Smith became a defaulter.    The township sued the principal and sureties on the bond, in the circuit court, and on the 17th of February, 1873, recovered judgment for damages, six thousand six hundred and eighty-five dollars and twenty-eight cents, and costs taxed at forty-five dollars and thirty cents.    Execution was stayed until April first, 1873, and was issued on the 3d of that month, and on the same day a levy was made on a large amount of complainants' property, including real estate, and also on certain parcels of real estate as the property of the defendant Rumsey.    These last parcels were described in the levy as follows:    "The west half of the northwest quarter of section twenty-nine, and the east half of the northwest fractional quarter of section thirty, and land sixteen rods east and west by ten rods north and south out of north-

east corner of southeast quarter of northeast quarter of section thirty, all in township seven north, of range two west, in Clinton county, Michigan."

Within a short time after the levy the amount which the execution called for was fully paid by complainants, one-half by each, and the sheriff, by direction of the attorneys for the plaintiff in execution, retained the writ in his hands. Complainants thereupon filed this bill against Rumsey, their co-surety, and the other defendants, his sons-in-law, the latter claiming as grantees from Rumsey all the lands levied on as his, except forty acres on section twenty-nine, and he making claim of a homestead right on a portion of the land on that section so levied on. The bill is not strictly one for contribution. It insists that on the payment of the judgment a right accrued to contribution, and that the levy, under the equitable doctrine of subrogation, instantaneously inured to complainant's benefit, in so far as necessary to work out contribution under the execution at law, and that the aid of equity is needful, not to expressly decree and compel contribution, but to remove obstacles fraudulently interposed and set up to prevent the obtainment of contribution through the execution and levy. The real purpose is to get rid of these impediments, so that the quota claimed of Rumsey may be collected under the process at law, and as inducement to the right to come into equity for the removal of these impediments, the matters concerning the right to contribution and the right of subrogation are necessarily set forth. The bill states that Smith, the principal, and Tripp, the other surety, are respectively insolvent; that Rumsey is responsible, and in equity bound to contribute to each complainant one-sixth of the debt; but that intending to evade his obligation and cheat and defraud complainants, he, together with his wife, deeded, under date of March 31st, 1873, the day before the stay of execution expired, to his son-in-law, Rollin Hathaway, the northwest quarter of the northwest quarter of section twenty-nine, and also deeded under the same date to James H. Hathaway,

another son-in-law, the east half of the northwest quarter of section thirty; that he lives on said northwest quarter of the northwest quarter of said section twenty-nine; that all his interest levied on, exclusive of the premises so deeded, is wholly insufficient to satisfy his share of the amount paid on execution; that complainants are informed and believe that the lands so deeded are worth five thousand dollars, and that there was no consideration for the deeds, and that his sons-in-law respectively received them with the intent and purpose of cheating and defrauding complainants in the premises. The bill then asks that Rumsey may be decreed to pay to complainants respectively the sums rightly due them on account of such suretyship and payment; that said deeds may be declared fraudulent and void as against the complainants, and that said Rollin and James H. may be respectively decreed to reconvey the lands described in such deeds to Rumsey, to *the end* that the sheriff may sell the same under and by virtue of said execution and levy to satisfy the amount due from said Rumsey to complainants respectively.

The answer of the defendants, in which all joined, admits the judgment, the conveyances by Rumsey to his sons-in-law, and his residence on the northwest quarter of the northwest quarter of section twenty-nine; but neither admits nor denies the insolvency of the defaulter Smith, or of the co-surety Tripp, the issuing or levy of the execution, the amount of the judgment, or the amount paid by complainants.

It denies liability to contribute, the solvency of Rumsey, and all fraud in deeding to the Hathaways; and insists that these deeds were upon good, valid and sufficient consideration. It then sets up that about the middle of April, 1871, an agreement was made between Rumsey and Rollin Hathaway, whereby the latter and his wife, a daughter of Rumsey, were to work four years for Rumsey for the piece of land specified in the bill as deeded on the 31st of March, 1873, by Rumsey and wife to said Rollin; that immediately

after this agreement was made, Rollin and his wife began work thereunder, and so continued up to the time of answering; that the land in question at the time of conveyance was not, and is not now, worth more than eight hundred dollars, whilst the work of defendant Rollin and his wife is well worth two hundred dollars per year; that the small parcel of about an acre on the southeast quarter of the northeast quarter of section thirty, embraced in the levy, was sold to said Rollin for cash paid down in 1871; that about the 15th of February, 1872, the defendant Rumsey sold the east half of the northwest quarter of section thirty to James H. Hathaway for two thousand five hundred dollars, and that long prior to the judgment said James had paid to said Rumsey all of the purchase price going to him; that about the 19th of March, 1872, he so paid two hundred and thirteen dollars and forty-five cents in money, and seventy dollars in the amount of a saw and lumber bill he held against Rumsey, and five hundred and ninety-two dollars in a debt Rumsey owed him for work he had done for him; that there was a five hundred dollar mortgage on the land, with accrued interest, and which he, said James, assumed and agreed to pay; that soon after his purchase said James went into actual possession, and has since that time resided on the land. The answer then contains the following matter: "These defendants show and aver that William Bird, an old man, had an interest in said land to the amount of one thousand eighty-four dollars and seventy-five cents, for money which he advanced to the said Luther Rumsey, and for which he was, by an arrangement with the said Luther Rumsey, to have and hold an interest in said land, for the purpose of securing to him his support. These defendants aver and show that the said James H. Hathaway, when he purchased said land, assumed the said obligation of one thousand eighty-four dollars and seventy-five cents, and agreed to secure and pay the same, and has executed and delivered a mortgage for the same."

It is next set up that defendant James has built a house

worth six hundred dollars on the land, and that at the time of his purchase the premises were not worth more than two thousand five hundred dollars, and are not now, aside from the house; that the northwest quarter of the northwest quarter of section twenty-nine, where defendant Rumsey lives, is his homestead.

Finally the answer avers that the levy was wholly released and destroyed by complainants' payments; and then by way of demurrer makes the point that so much of the bill as unites complainants as co-parties, and also prays joint relief, is not good in law. A general replication being filed, and proofs being taken, the cause was heard upon the merits, and the court made a final decree in favor of complainants. By this decree it was declared that defendant Rumsey was liable, and ought to contribute; that the sum for which he was so liable, and ought to pay to complainants, was two thousand five hundred and ninety-five dollars and twenty-six cents, and that he pay the same.

It was also declared that the levy in the sheriff's hands, on the west half of the northwest quarter of section twenty-nine, and the east half of the northwest quarter of section thirty, and land sixteen rods east and west by ten rods north and south out of the northeast corner of the southeast quarter of the northeast quarter of said section thirty, all in township seven north of range two west, constituted a good, valid and subsisting lien upon said premises, and inured to the benefit of the said complainants. It was further declared that the deed from Rumsey and wife, of March 31, 1873, to defendant Rollin, for the northwest quarter of the northwest quarter of section twenty-nine, and the deed of like date from Rumsey and wife to defendant James H. Hathaway, for the east half of the northwest quarter of section thirty, were made without consideration, and with intent on the part of Rumsey and the grantees to cheat and defraud complainants, and were, as to the latter, fraudulent and void, and that all of said premises were subject to the payment of the sum of money before mentioned; and finally it was

SMITH v. RUMSEY.

decreed that defendants Rollin and James H. Hathaway respectively reconvey to Rumsey, and that the sheriff proceed to sell under the levy, and apply the proceeds, or what thereof may be necessary, to the payment of the sum adjudged by the decree to be due to complainants, and that the latter recover their costs, and have execution therefor. The defendants appealed.

This tedious detail has been deemed expedient for two reasons: *First,* to see what points and issues the case really raises and leaves open for controversy; and *second,* on account of some incongruities in the record.

On turning to the proofs we find the ground of contention much curtailed. The alleged suretyship, the execution and payment by complainants, the retention of the execution and levy by the sheriff, and the utter insolvency of Smith, the treasurer and principal in the bond, and of Tripp, the surety not sued in this case, are facts fully proved, and not now disputed.

The proposition, that the court is bound to adjudge according to the case shown and issues raised by the pleadings, is so evident, and has so repeatedly been expounded and applied in this state, that any thing beyond a reference to it would scarcely be excusable. Without noticing all the cases, or any of the most recent, it is enough to cite the following by way of illustration.—*Thayer v. Lane, Walker Ch., 200; Manning v. Drake, 1 Mich., 34; Van Dyke v. Davis, 2 Mich., 144; Smith v. Brown, Ib., 161; Cicotte v. Gagnier, Ib., 381; Warner v. Whittaker, 6 Mich., 133; Wright v. Dudley, 8 Mich., 115; Bloomer v. Henderson, Ib., 395; Barrows v. Baughman, 9 Mich., 213; Gorham v. Wing, 10 Mich., 486; Dunn v. Dunn, 11 Mich., 284; Peckham v. Buffam, Ib., 529; Moran v. Palmer, 13 Mich., 367.*

This rule, so manifestly proper in itself, has a direct and plain application in this case.

The bill raises no question whatever in regard to the title to the one-acre parcel on the southeast quarter of the

northeast quarter of section thirty, claimed by Rollin Hath-away. In describing the property levied on as owned by defendant Rumsey, that piece was included, and that is all. There is no charge or statement to affect the ownership, or any claim for the removal of any obstacle in the way of the execution. The remedial features of the bill ignore this piece, and there was no ground for that portion of the decree which assumes to positively subject it to the execution.

The bill and answer perfectly agree that the specific parcel deeded by Rumsey and wife to Rollin Hathaway, March 31, 1873, is the northwest quarter of the northwest quarter of section twenty-nine, or, as may be said, the north half of the west eighty acres of the quarter; and they equally agree, after amendment by stipulation, that Rumsey's residence was and is on the same parcel; and the proofs show that the deed, as drawn, executed and delivered, on the part of Rumsey and wife to Rollin Hathaway, actually described the land deeded in this way; and further, that the deed continued in such shape, not only until after the levy, but for many months after the bill was filed, and was then altered by the grantors so as to cover the south half of the lot, and leave Rumsey's residence unconveyed; and that this change was made under the claim that the original description was a mistake made by Mr. Strickland, the draftsman. There is no pretense of complainants' assent to this change, and they do not admit that there was a mistake. But all this is outside the pleadings, and contrary to the solemn admissions in the record. The claim in the proofs and by argument, that there was a mistake, and the proceedings by Rumsey and wife and Rollin Hathaway and their counsel to correct it, cannot help the defendants, or hurt the complainants. The case must stand as the parties through their mutual plead-ings have deliberately made it. In order to vary the grounds of contention and bring in this ingredient, it was indispen-sably necessary that the course of proceedings should be modified or changed in some way applicable to the circum-stances.. We do not pause to point out the precise method.

Looking, then, at the course the parties have chosen to take, it is quite impossible for this court, in the exercise of its appellate power, to adjudge on the hypothesis that the deed to Rollin should have applied, and now properly applies, to the south instead of the north half of the lot.

The pleadings and evidence agree that from a considerable time prior to the levy down to that of his testifying in the case, the home of the defendant Rumsey and his wife was in fact on this north forty acres. There were the dwelling house and out-buildings. Up to the 31st of March, 1873, when the deed was given to Rollin, there is no question but that Rumsey had a homestead there. It was not then subject to execution. It was exempt. It was, however, grantable. It was capable of transfer by deed executed by himself and wife, and since creditors could enforce no process against it, could no more pursue it for their debts against him, than they could pursue for the same purpose the absolute property of the government, the law will not allow it to be said that the transfer of it, if any were made, operated to defraud creditors. When the law declares that a debtor's disposal of his property with intent to defraud his creditors shall be voidable at the instance of his creditors, and at the same time declares that specific property of the debtor shall be exempt as against his creditors' adverse claims, the provisions are in *pari materia,* and must be construed together, and the latter provision must be held to except this exempt property from the operation of the former provision. Certainly it would be very inconsistent to say that a debtor's disposal of property, and which property, in so far as the creditor and his claims are concerned, may be said to have no existence at all, is a fraud upon the creditor.—*Story's Eq.,* § *367 and cases cited,* and especially *Mathews v. Feaver, 1 Cox Eq., 278.* This position is not within the sweep of the discussion in *Bayard v. Hoffman, 4 J. C., 450,* and numerous similar cases. There the real subject for consideration was, whether stock, or other intangible property which could not be reached by an execution at law,

might not be subjected to the creditor's claim by the court of chancery, and consequently whether the circumstance alone, that the property from its nature could not be taken on the execution at law, should be held as warranting the proposition that no shift or transfer of such property could amount to a shift or transfer in fraud of the rights of creditors. Upon this question the current of authority in England, and the course of decision and of legislation in this country, have been different. But the reasoning on the question necessarily implies that the property itself is not set apart by the law as positively exempt from all coercive proceedings, both at law and in equity. The debate relates to the existence and importance of a remedy to reach a species of property, not subject to execution, indeed, but still not positively exempted from forced appropriation to satisfy debts; and it supposes that the property is not by law impressed with any character which gives it complete immunity against all coercive proceedings of creditors in all courts, but has a character which may enable it to escape unless the court of chancery afford a remedy. Here the question is different. The law excludes the homestead from all remedies of creditors in all courts, and the power of the creditor to take it against the will of the owner is absolutely subverted. There is no question left as to whether there is or should be a remedy somewhere to subject the homestead. The law has closed the door against all discussion about it. In view of the case, then, as we find the parties have made it, and accepting the fact in which they agree in their pleadings, that Rumsey and wife deeded to Rollin Hathaway the north half of the lot on section twenty-nine, and that Rumsey and wife there resided, and yielding to the proof that at the time of this conveyance the grantors had their home there, I think it follows that when that grant was made Rumsey had a homestead right on the granted forty acres, of undefined territorial extent, and that the grant, in so far as such right extended, cannot be adjudged a fraudulent grant as against the com-

plainants in their character of creditors of Rumsey. The point is not whether Rumsey may now, after having, as he claims, ceased to be owner, proceed to insist upon the existence of a present homestead right in his favor, but it is whether, on being charged with a fraud against his creditors, in making conveyance of his homestead, he is not entitled to reply: "True it is I did not mean that you should have my homestead for your claim against me, and I conveyed it, but in your character of creditors you were not thereby defrauded, or even prejudiced, since the law positively forbade your subjecting it against my will, either by legal or equitable proceedings, and moreover left in me the perfect right to grant it away, provided my wife would join." It appears to me fallacious to make the question turn upon the present want of ownership in Rumsey, as between him and Rollin Hathaway, and then deal with the transfer as though it related to property in general. A view of that kind must involve a confusion of the order of events and the unwarranted assumption that the owner of the homestead by granting it can defraud his execution creditors.

This opinion, it may be said, disagrees with observations of the chief justice in *Herschfeldt v. George, 6 Mich., 456,* and this is no doubt true. To the extent of the disagreement I cannot assent to what is said in the opinion of *Chief Justice Martin* in that case.

The pleadings leave the title to the south half of the lot on section twenty-nine in Rumsey, and without any conveyance in seeming conflict with the lien originally obtained by the levy. Admitting the right of complainants to have the levy sustained and proceeded under to a sale for their benefit, the pleadings disclose no obstacle in so far as this parcel is concerned.

The defendants raise three objections to the case, which may now be noticed: *First,* they insist that whatever claims the complainants may have for contribution, they are individual, separate and distinct, and not joint, and not matter of joint complaint in equity. Whatever force this objection

33 MICH.—25.

might possess if the case was strictly one for contribution, it is not a valid one here. But there are even cases at law for contribution, where two or more sureties are allowed to join as plaintiffs. Such, for example, where two or more sureties pay the debt out of a joint fund.—*1 Parsons on C., 35 and cases cited.* The present case, however, does not come within the principle on which these cases rest, nor within the principle which discountenances a joint suit. The ground of the complainants' equity here extends to and takes in the alleged security obtained by the township, the original creditor against Rumsey, the co-surety of complainants, and the latter seek to make that security available in their favor against Rumsey, their co-surety. The security in question is a lien on land, obtained by means of a levy. The levy is an entire thing, in the sense of giving a lien capable of being enforced by sale for complainants' benefit; and their rights and interests, however separate in regard to their payments to the township, and in regard to their claim against the pocket of their co-surety, come together and join in the pursuit and subjection of the lien. The levy on Rumsey's land, as an item of security obtained by the township, is in itself indivisible, and hence not apportionable, and the relief sought, in so far as it turns on the subjection and enforcement of this lien, is necessarily joint. This objection, then, is not well founded.

*Second.* It is also objected that the case is properly cognizable at law and not in equity. This is so clearly without force as to merit no comment.—*1 Story, Eq.,* §§ *492 to 508; 3 Kent, 124, 12th Ed.; Willard's Eq., 106; Adams' Eq., 267, 269 and notes; 1 Spence, 661 to 664; 2 Ib., 837 to 845; Dering v. Earl of Winchelsea, and Eng. and Am. notes, 1 L. C. in Eq.; 1 Par. C., 38, and 32 n. d.*

*Third.* It is next claimed that on the payment made by complainants the execution ceased to have any force, and the levy expired. The doctrine in England lends countenance to this position. The courts of equity there lay down

the principle in very broad language that the surety is entitled to be subrogated to all the securities acquired by the principal creditor,—*Craythorne v. Swinburne, 14 Ves., 160,* where *Lord Eldon* adopts the language of *Sir Samuel Romilly's* reply; but they at the same time hold that where the surety pays the whole amount called for by the security on which he became surety, he cannot be subrogated to that identical security.—*Hodgson v. Shaw, 3 Myl. & K., 183.* And this limitation of the doctrine is rested on what would seem to be a ground quite too narrow and technical to satisfy the sense and jurisdiction of equity. The ground is, that the surety in paying up the amount extinguishes the security, and hence that the latter no longer exists to serve the purpose of subrogation. The reasoning which has attempted to support this view is not satisfactory in itself, or in harmony with the principles on which the equities of sureties rest, or with the general maxims of the court. And notwithstanding the authority with which the rule has been expounded in England, there are not only individual cases, but classes of cases, there within its range in which it has been disregarded.

The weight of authority in this country supports a broader and wiser view. It looks to the relations of the parties, and the substantial rights and duties which are incident to such relations, and not to considerations purely technical, and considers that the debt and the evidence of it, and legal benefits built upon it in the form of liens, ought not to be considered as annihilated if the purposes of equity and justice require the contrary; and where the intention with which the payment is made requires that the security should survive, either generally or against particular persons, and the situation and relations of the parties will fairly admit it, a court of equity will generally, in this country, respect the intention; and treat the security as in being to the end designed, and recognize and enforce the right of subrogation. —See authorities last cited; also *Am. note to Aldrich v. Cooper, 2 L. C. in Eq. (3 Am. from 2d Lon. Ed.), 226 to*

*230, top; Lidderdale's Exrs. v. Robinson's Admrs., 2 Brock.,*
*159; S. C., 12 Wheat., 594; Bk. of U. S. v. Winston's*
*Exrs., 2 Brock., 252; Cuyler v. Ensworth, 6 Paige, 32;*
*Eddy v. Traver, Ib., 524; N. Y. State Bk. v. Fletcher,*
*5 Wend., 85; Cory v. Leonard, 56 N. Y., 494; Hart v.*
*Western R. R. Corporation, 13 Met., 99; Wall v. Mason,*
*102 Mass., 313, 316; Low v. Blodgett, 1 Fos., 121;*
*Atwood v. Vincent, 17 Conn., 575; Goodyear v. Watson,*
*14 Barb., 481; Neilson v. Fry, 16 Ohio St., 553;*
*Dempsey v. Bush, 18 Ohio St., 376; Neal v. Nash, 23*
*Ohio St., 483.*

This doctrine is founded on higher and better reasons
than the doctrine announced in England, and the case is
within it.

The debt going to the township was indeed satisfied as
between the defendants in the judgment, who were the
obligors in the bond, and the township, which was plaintiff
in the judgment and obligee in the bond, but as the parties
were situated and related it was not in equity and justice
satisfied as between the complainants who paid and the prin-
cipal and their co-sureties in the bond, and the very act of
payment to the township with intent to keep the security
alive as against the defendants in this case, and not to
extinguish it, supplied the required circumstance needed in
connection with the other facts to invest complainants with
the right to claim contribution from Rumsey, and at the
same time invested them with the right, as against both
Rumsey and the township, to insist that the levy should
remain to be enforced for their benefit.    And it is an
unwarranted assumption to say, that because the security was
no longer of efficacy in favor of the township, in consequence
of the payment by complainants of the claim made by the
township through or upon it, it was therefore no longer of
efficacy in equity as between those equally bound, and could
not be resorted to as a means to prevent one from throwing
his just share of a common burden upon others standing on
equal ground with himself.    Indeed the equitable right of

complainants could scarcely be plainer if the township and the defendant Rumsey had concurrently stated to complainants, upon their making payment, that it should in no manner preclude them from having recourse to the levy as against him.

There is not a fact in the case to countenance the notion that an extinguishment of the levy as against him was intended by the township or complainants. The proof is decisively the other way.

On the whole it is clear that notwithstanding the payment to the township, the levy still subsisted as against Rumsey for complainants benefit, that the latter were in the situation of equitable purchasers of the levy from the township for specific uses, and that equity would have interfered to prevent the latter from impairing the force of the levy to their injury, and from taking any step to obstruct or hinder their rightful recurrence to it. No doubt complainants might have so shaped their course as to have canceled the levy, and to have cut off all right to resort to it; but they did not. On the contrary, their action was plainly regulated by the opposite purpose. If the position of defendants' counsel were sound, the right of subrogation in a multitude of cases would prove to be a barren one.

This disposes of all the special objections taken by counsel for the defendants, and the only question remaining relates to the validity of the transfers on the 31st of March, 1873, as against the right of complainants to enforce the levy for their benefit, and so far as necessary to raise the share Rumsey was and is bound to contribute. It was admitted in proof that the judgment and proceedings were stayed as alleged in the bill, until the day succeeding the 31st of March, when these transfers were made; and the payment by complainants was not only proved, but admitted by defendants' counsel in his brief. The retention by the sheriff of the execution after the payment, and the direction of the attorneys for the township that it should be retained, were likewise proved, and there is no claim to the contrary,

or any claim opposed to what the evidence tends very strongly
to show, although there is no express proof on the subject,
that the writ was so retained pursuant to an understanding
between complainants and the township therefor.

Coming to the question of fact, touching the design with
which these deeds were made and received, and the end
intended to be accomplished, a few words will suffice.    It
would be tedious, and would unnecessarily lengthen this
opinion, to advert in detail to the facts and circumstances
bearing on this point.    A careful examination and compar-
ison ·of all matters shedding light upon the motives and
purposes of the defendants, and the nature of the transac-
tion, inspire the opinion that these persons were not acting
in good faith, but upon a plan contrived to prevent the sub-
jection of the land for the payment of any share of the
judgment.

It follows as a consequence that complainants showed
themselves entitled to relief.    But the views which have
been expressed show also that the relief given below was not
appropriate to the case made.    The complainants were
entitled to a declaration giving them the benefit of the levy
as to the east half of the northwest quarter of section thirty,
and the west half of the northwest quarter of section twen-
ty-nine, except as to so much of the northwest quarter of
the northwest quarter of said section twenty-nine as consti-
tuted the homestead of defendant Rumsey at the time he
and his wife conveyed to Rollin Hathaway on the 31st of
March, 1873, and so far as necessary to raise the amount
payable by Rumsey to complainants.

The complainants were further entitled to a decree for
an admeasurement and set-off of the homestead according
to the situation and value at the time of the conveyance to
Rollin Hathaway, and for setting aside the deed to James
H. Hathaway, and the deed to Rollin Hathaway, of the
31st of March, 1873, except as to the parcel set apart as
constituting the homestead of defendant Rumsey at that
date, as fraudulent against the levy and the right of com_

plainants. No decree should have been made touching the one acre parcel, for the reason before given; and as the conveyed homestead was not liable, and the bounds of it have not been established so as to show how far the deed to Rollin cannot be disturbed, or to what extent the levy can be executed by sale upon the northwest quarter of the northwest quarter of section twenty-nine, provision should have been made for ascertaining the homestead by metes and bounds.

The decree below being wrong, and the defendants being compelled to come to this court or submit to the error, they are entitled to their costs.

The cause should be remanded, with directions to modify the decree according to this opinion, and for such further proceedings as may be necessary.

The other Justices concurred.