DANIEL B. STEVENS *vs.* CHARLES E. KING.

Androscoggin.    Opinion February 4, 1892.

*Attachment.    Lien.    Subrogation.*

Where a grantee buys real estate, and at the request of the grantor pays the consideration due therefor to certain persons having suits pending against the grantor, with attachments on such real estate to secure lien claims due them on the same, such grantee will be subrogated to the ownership of the claims thus paid, and, with the consent of such persons, he may prosecute such suits in their names for his own benefit, to prevent the priority of later attachments placed upon the property without his knowledge after he paid out his money and before he recorded his deed.

When notice of a deed is insufficient to defeat an attachment.

*Cobb* v. *Dyer*, 69 Maine, 494, affirmed.

AGREED STATEMENT.

The parties agreed that, if the plaintiff was entitled to recover, the defendant should be defaulted for the amount claimed in the writ; otherwise plaintiff to become nonsuit.

*G. C. and C. E. Wing*, for plaintiff.

*Savage and Oakes*, for defendant.

No debt legally due plaintiff, nor has he any lien. Damren took assignment of debts subject to all defenses including payment. There must be a rescission of the compromise settlement between the original parties. R. S., c. 82, § 45; *Bisbee* v. *Ham*, 47 Maine, 543; *Potter* v. *Ins. Co.* 63 *Id.* 440.

Defendant has paid seventy per cent of all these claims by his conveyance to Mrs. Damren. If Damren is allowed to prosecute these lien suits and recover judgment for the full amount, he will then have received from defendant the property for which he paid his money and have judgment against defendant for the money so paid and the thirty per cent discount which the original plaintiffs conceded. His wife will have King's property and King will be compelled to pay him one hundred dollars for every seventy dollars of the purchase money which was applied in payment of these claims. The rights of third parties have intervened, who cannot be heard in this suit.

PETERS, C. J.   The defendant (King) through a real estate broker (Hunton), bargained to sell to Lavinia E. Damren certain real estate the title to which, subject to incumbrances, stood in his name. The incumbrances consisted of mortgages to a savings bank, and a number of lien claims of persons who had furnished labor and materials for constructing and repairing buildings on the premises. Attachments had been placed upon the property for the enforcement of the lien claims. In order to remove the incumbrances and pay them off out of the proceeds of the expected sale, the defendant, in pursuance of previous arrangement, lodged his deed of the property in the hands of the broker, to be delivered to the purchaser when the incumbrances should be cleared and the consideration paid. Thereupon the husband of the purchaser went with the defendant and the broker to the different lien-claimants and settled their claims for seventy-five cents on the dollar, taking receipts therefor, and also paid the mortgages at the bank. The sum so advanced was just equal to the amount to be paid for the deed, which was then delivered and recorded.

The report of the case thus continues: "While the deed remained in the possession of Hunton, and after said payments had been made, certain general creditors of King (who were not lien creditors) with the knowledge of King, but without the knowledge of either Hunton, Samuel G. Damren, the husband, or Lavinia E. Damren placed their claims in the hands of J. W.

Mitchell, Esq., and caused attachments to be made on the real estate of King. Mitchell at the time he made these attachments knew of the arrangement between King, Damren and Hunton, and that the deed was in Hunton's possession. Neither Samuel G. Damren nor Lavinia E. Damren knew of these attachments until after the delivery of the deed by Hunton to Samuel G. Damren, and only a few hours before the same was placed on record. Upon ascertaining the fact of these general attachments, Samuel G. Damren obtained to himself assignments of the various lien claims, and obtained from the attorneys of these parties the writs which had been made and served to enforce their lien claims, and entered the same in court.

"The above entitled action is one of the suits brought to enforce said lien claims, and it is agreed that the amount therein stated to be due from King to the plaintiff was correct at the date of said writ, and is correct unless the same has been discharged upon the statement of facts above made. The payments made by Samuel G. Damren, under the arrangement with Hunton, were made to the lien creditors personally and not to their attorneys. If upon the foregoing statement of facts, the plaintiff is entitled to recover, the defendant is to be defaulted to the amount claimed in the writ, otherwise plaintiff nonsuit."

We are of opinion that the action may be maintained, for the benefit of the party prosecuting it, upon the principles of the doctrine of subrogation.

Legal subrogation takes effect to its full extent for the benefit of one who being himself a creditor pays the claim of another who has a preference over him by reason of his liens and securities. Bou. Law Dic. *Subrogation*. It applies to a great variety of cases, and is broad enough to include every instance in which one party pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter; not, however, in the interest of mere volunteers and intermeddlers; nor is it allowed so as to do injury to the rights of others. It ignores the form and looks to the substance. It construes payment to be purchase and purchase to be payment, as justice may demand. It substitutes

one person for another or property for property. Sheldon on Subrogation, § 247, lays down as deducible from the cases on the subject the following rule: "And a party who has paid a debt at the request of a debtor, and under circumstances which would operate a fraud upon him if the debtor were afterwards allowed to insist that the security for the debt was discharged by his payment, may also be subrogated to the security, as to that debtor."

The present is a fit case for the application of such rule. The grantee of the deed advanced her money for the purchase of the land. It turns out that the money went, not for payment of the land, but for the discharge of certain claims upon the land. If she does not get a title to the land, she gets the claims. The transaction has the same effect as if she had purchased the claims and attempted to pay for the land by her discharge of the claims, and was prevented from doing so. It was an uncompleted transaction. She intended to do one thing and accomplished another. By this subrogation no one is injured, and Mrs. Damren is throughout the attempted sale and settlement the only sufferer.

No question arises between Mrs. Damren and the lien-claimants. They assent to her prosecution of the claims in their names.

We do not think any knowledge that Mr. Mitchell possessed would prevent the claims sued by him having priority over the deed. He knew of the negotiation, but not of a completed transaction. His clients had as much right to endeavor to obtain prior attachments as the other party had to obtain a prior deed.

The present case is in its essential character exceedingly like that of *Cobb* v. *Dyer*, 69 Maine, 494, where the doctrine of subrogation is discussed upon the authorities, and principles are there established which are applicable here. That was a decision in equity whilst the present is an action at law. Fortunately, the present situation is such that equity need not be invoked. The law is as fond of the principle as is equity,

whenever it can be made available in legal procedure. Here it can be.

*Defendant defaulted.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.