Merrimack, }
Dec. 4, 1902. }

## CONTOOCOOK FIRE PRECINCT *v.* HOPKINTON.

Where a fire precinct has paid the cost of a sewer which its commissioner, acting solely in a private capacity, has caused to be constructed for the benefit of a town, the prosecution of a suit by the precinct to recover the sum so expended cannot be regarded as a ratification of acts not assumed to have been done by its authority; and the precinct, not having constructed the sewer, cannot recover under a count for labor performed and materials furnished.

A voluntary payment for the accommodation of a creditor, made by one under no legal obligation to pay and not requested by the debtor so to do, cannot be recovered of the latter in an action of implied assumpsit.

Towns have authority to construct sewers, so far as they are necessary to put and keep highways in suitable condition for public travel, independently of the provisions of chapter 79 of the Public Statutes.

A town which accepts and uses a sewer, with knowledge that it is expected to pay the cost thereof, is liable for the reasonable worth of the labor and materials employed in its construction, in the absence of a special agreement for compensation.

One who voluntarily pays the debt of another is not entitled to subrogation unless there was an assignment of the claim by the creditor, or an agreement, express or implied, that the party making payment should be subrogated to the creditor's rights.

ASSUMPSIT, for labor performed, materials furnished, and money paid at the defendants' request, in constructing a sewer. Trial by jury at the October term, 1901, of the superior court, *Stone, J.,*

presiding, and verdict directed in favor of the defendants, subject to the plaintiffs' exception.

The evidence tended to prove the following facts : The plaintiffs are a corporation duly organized for the purpose of extinguishing fires and supplying water for domestic and fire purposes in the village of Contoocook in the defendant town. The chairman of the selectmen of the town, after conference with the other selectmen, authorized C, one of the commissioners of the precinct then engaged in constructing a water system, to procure sewer pipes and lay them in the trenches dug for the water pipes. C procured the sewer pipes and caused them to be laid by the contractor who laid the water pipes. The town paid for the sewer pipes. The contractor charged his services for laying the same to the precinct, in connection with his contract. The town officers exercised no supervision whatever over the work. The precinct had no authority to put in sewers, and took no action on the subject either by vote or through its commissioners. C, in his negotiations with the selectmen and the contractor, acted merely as a citizen, and not as the agent or representative of the precinct. The bills for materials used, excepting pipe, and for labor, were presented to the treasurer of the precinct, who paid them from the precinct's funds without the knowledge of the town or the town's officers. This was done as a matter of convenience, the precinct having funds not needed for present uses, and the claimants having use for the money. The town never adopted the provisions of the Public Statutes, authorizing towns to construct sewers. The sewer connects with one constructed by the town some ten years earlier. House drains and several manholes for street drainage are connected with it; and since its construction the town has connected two new sewers with it. The town approved the reports of selectmen for the year 1886 and several later years, each of which showed expenditures incurred in constructing or repairing sewers.

*Streeter & Hollis*, for the plaintiffs.

*Sargent, Niles & Morrill*, for the defendants.

CHASE, J. The plaintiffs gave C no authority, either expressly or impliedly, to construct the sewer on their account. He did not act as their agent or representative. Under these circumstances, the commencement and prosecution of this action cannot be regarded as a ratification of his acts by the plaintiffs. One condition necessary for the application of the doctrine of ratification is lacking, namely, the quality of agency in the acts them-

selves.    *Webb* v. *Cole*, 20 N. H. 490; *Richardson* v. *Payne*,
114 Mass. 429; *Hamlin* v. *Sears*, 82 N. Y. 327; Sto. Ag., s. 251 a.
The plaintiffs did not construct the sewer, and are not entitled
to recover under the count for labor performed and materials pro-
vided.

It appears that the treasurer, in paying the bills for constructing
the sewer, acted in his official capacity.    The fact that the plain-
tiffs brought this action to recover the money so paid, and are pros-
ecuting it, is sufficient evidence of their ratification of the pay-
ment.    *Corser* v. *Paul*, 41 N. H. 24.    It may be regarded as a
payment by them.    As has already been shown, the plaintiffs, and
consequently their treasurer so far as he acted as their agent,
were strangers to the construction of the sewer.    The persons
who furnished labor and materials for the job had no authority
from the plaintiffs to charge the same to them, and such charges
had no effect upon their liability.    The treasurer paid the bills,
not because the plaintiffs were under an obligation to pay them,
nor because the defendants or their agents had requested him or
the plaintiffs to do so, but to accommodate the persons to whom
the bills were due, they having use for the money and the treasurer
having it on hand.    The payment was purely and solely voluntary.
The plaintiffs by ratifying it did not change its character in this
respect.    It raised no implication of a promise by the defendants
to repay the sums so advanced, and the plaintiffs are not entitled
to recover under the count for money paid at the defendants' re-
quest.    *Chester* v. *Underhill*, 16 N. H. 64; *Webb* v. *Cole, supra*;
*Winsor* v. *Savage*, 9 Met. 346; *Middleborough* v. *Taunton*, 2 Cush.
406; *South Scituate* v. *Hanover*, 9 Gray 420; *Mansfield* v. *Edwards*,
136 Mass. 15.

The plaintiffs in their brief ask that, in case the decision upon
the foregoing points is adverse to them, they may be allowed to
amend the action by substituting for themselves as plaintiffs the
persons to whom the payments were made.    The law would
allow an amendment of this kind to be made if justice requires it.
*Fitch* v. *Nute*, 62 N. H. 700; *State* v. *Collins*, 68 N. H. 46.    If it
appears that after such an amendment was made the defendants
would not be liable in the action, it would be worse than useless
to make the amendment.    Its only effect would be to prolong the
action and subject the parties to expense — a result which justice
will lend its aid to prevent.    Therefore, in view of the plaintiffs'
request, it is deemed best to consider the questions bearing upon
the defendants' liability, which have been argued by counsel on
both sides, although a decision of them is not necessary for a dis-
position of the case.

The defendants say they are not liable because, never having

adopted the provisions of chapter 79, Public Statutes, relating to sewers, they had no power to construct the sewer in question. This position is untenable.    Independently of those provisions, the defendants had power to construct sewers, so far at least as they are needed to put and keep highways in suitable condition for public travel by carrying water and filth away from the highways. This power is incident to the power granted to towns to lay out, build, and repair highways.    P. S., *c.* 40, *s.* 4 ; *Cone* v. *Hartford,* 28 Conn. 363 ; *Leeds* v. *Richmond,* 102 Ind. 372 ; 2 Dill. Mun. Corp. (4th ed.), *s.* 805.    It appears that several manholes are connected with this sewer for street drainage.    The fact that house drains are also connected with it does not show that the sewer was not needed to render the highways suitable for the public travel.    As the defendants have not adopted the provisions of chapter 79, they may not have authority to tax the persons whose drains enter the sewer their just share of the expense of constructing it; but no reason is apparent why they may not grant the privilege to such persons for a consideration agreed upon, or, if they see fit, without consideration.    If towns are not charged with the duty of protecting and promoting the good health of the public, they are not prohibited from doing so to the extent of allowing the use of their appliances for the purpose, when such use will not interfere with the utility for which the appliances were designed.

The defendants further say they are not liable because they did not authorize the building of the sewer, either by vote or by the action of their selectmen.    But acceptance and use of the sewer by the defendants, with knowledge that they were expected to pay the cost of its construction, would be equivalent to original authorization in fixing their liability.    *Low* v. *Railroad,* 45 N. H. 370 ; *S. C.,* 46 N. H. 284.    The negotiations between C and the selectman had a tendency to show that, in constructing the sewer, C assumed to act in behalf of the defendants.    If the payment for the pipe does not show original authorization, it tends strongly to prove the adoption of the sewer by the defendants, together with an understanding on their part that they were to pay for it.    Besides these facts, it appears that they have connected two new sewers with it; and also that, through its connections with manholes, it is used for street drainage.    Apparently, the defendants treat it as their property.    In the absence of a special agreement with those who constructed it, the defendants would be liable to pay what the labor and materials put into it were reasonably worth.    No special agreement is set up by them to relieve them from liability.    There certainly is competent evidence from which it could properly be found that they have adopted and ratified the

acts of those who built the sewer, and so are liable to pay reasonable compensation for the labor and materials employed in its construction.

The defendants finally say that they are not liable because of the plaintiffs' voluntary interference and payment of the bills for the construction of the sewer. As above shown, the plaintiffs cannot recover in their own name for the money which they have paid to the contractor and others. But the plaintiffs' request for leave to amend raises the question whether they are entitled to be subrogated to the rights of the parties whose bills they have paid, and may in that way prosecute the claims in the names of those parties as nominal plaintiffs. "The doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another, without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own." Sheld. Sub., *s.* 240. This is the rule, notwithstanding "the right of subrogation does not rest upon contract or privity, but upon principles of natural justice and equity." 61 N. H. 356. "The doctrine of subrogation is a pure, unmixed equity, and from its very nature could not have been intended for the relief of those who were in a condition and at liberty to elect whether they would or would not be bound." *Gadsden* v. *Brown*, Speer's Eq. 37, 41; *Stevens* v. *King*, 84 Me. 291, 293; *Sandford* v. *McLean*, 3 Paige 117, 122; *Gans* v. *Thieme*, 93 N. Y. 225, 232; *Shinn* v. *Budd*, 14 N. J. Eq. 234; *North River Co.'s Case*, 38 N. J. Eq. 433; *S. C.*, 40 N. J. Eq. 340; *McNeil* v. *Miller*, 29 W. Va. 480, 483; *Bank of U. S.* v. *Winston*, 2 Brock. 252, 254.

The plaintiffs, therefore, are not entitled to subrogation as a matter of right, nor unless there was an assignment to them by the creditors of the bills paid, or an agreement, express or implied, that the plaintiffs should be subrogated to the rights of the creditors. Such assignment or agreement may be made by parol. 2 Sto. Eq. Jur., *s.* 1047. The question then arises whether there was an understanding between the plaintiffs' treasurer and the creditors whom he paid,— whether their minds met upon the proposition,— that the plaintiffs were purchasers of the bills paid, or were to take the place of the creditors and possess their rights against the defendants; or whether the understanding was that the bills were actually paid and discharged as against the defendants. "The question, as between payment and purchase, is one of fact rather than of law, to be settled by the evidence, largely presumptive, generally, in the case. It is a question of the intention of the parties." *Wood* v. *Trust Co.*, 128 U. S. 416, 424; *Stevens* v. *King*, 84 Me. 291, 293; *Neely* v. *Jones*, 16 W. Va. 625; Sheld. Sub., *s.*

248.   It would not be sufficient if the treasurer alone understood that the bills were assigned to the plaintiffs, or that the plaintiffs were subrogated to the creditors' rights; the creditors must also have the same understanding.   *Receivers Midland R'y* v. *Wortendyke*, 27 N. J. Eq. 658, 660 ; *Coe* v. *Railway*, 31 N. J. Eq. 105, 134, 135.

There is evidence in the case having a tendency to show that the treasurer and creditors understood that the transactions between them were purchases of the bills, instead of payments.   The fact that the money was paid as a matter of convenience to the creditors has this tendency.   But this question of fact cannot be determined here.   If the plaintiffs renew their motion for leave to amend in the superior court, this question, together with all other questions of fact bearing upon the exercise of the judicial discretion invoked by the motion, will arise and must be determined there.   Upon the consideration of the motion it will be necessary to take into account the fact that the creditors' claims against the defendants are several and cannot be prosecuted jointly.

*Exception overruled.*

WALKER, J., did not sit : the others concurred.