CLARA T. JOHNSTON ET AL. vs. ERNEST F. MOELLER
ET ALS., TRUSTEES.

Third Judicial District, Bridgeport, April Term, 1919.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and MALTBIE, Js.

Paragraphs of a proposed or draft-finding marked "proven," will be
treated by this court as though they were actually incorporated in
the formal finding.

The doctrine of contribution rests upon the assumption that those
who incur expense are interested in warding off a peril, or in se-
curing a benefit, which is common to themselves and to those from
whom the reimbursement is sought.

Unless the payment of life annuities given by will is, or is likely to be,
jeopardized by the claim of the testamentary trustees for their
services and disbursements, the annuitants have no personal in-
terest in opposing the trustees' claim, and therefore cannot charge
expenses incurred by them in making such opposition, upon the
estate, to the detriment of the residuary legatees; especially if the
latter, as in the present case, are represented by their own counsel
in opposition to the allowance of such claim. Under such circum-
stances the annuitants must be regarded as mere volunteers acting
of their own free will in defense of the rights of the residuary lega-
tees, the real parties in interest.

Counsel who acted for the residuary legatees—who were the testator's
grandchildren and minors—had previously been appointed as their
guardian ad litem and the Court of Probate recognized him as such
guardian upon the hearing respecting the question of the allowance
of the trustees' account. Held that whether such recognition was
to be regarded as a formal appointment under General Statutes,
§ 4874, or not, it was virtually equivalent to such an appointment
for that particular hearing, so far as the annuitants were concerned.

It appeared that since the trustees' account had been presented other
grandchildren had been born, and that still others might be born
thereafter. Held that this was of no avail to the annuitants in
their claim for contribution.

Upon the hearing counsel for the minors filed the certificate of his pre-
vious appointment as their guardian ad litem. Held that this was
properly admitted to show in what capacity he was at least assum-
ing to act, and that a question put to him to the same effect was
properly allowed.

Argued April 15th—decided July 16th, 1919.

APPEAL from the denial, by the Court of Probate for the district of New Haven, of the plantiffs' application for an order directing the executors and trustees under the will of Constand A. Moeller of New Haven, deceased, to reimburse and pay over to the plaintiffs a sum of money alleged to have been expended by them in protecting the estate of said decedent, and the interests of the remaindermen therein, from extortionate charges for fees made by said officials,—taken to the Superior Court in New Haven County where a demurrer to the reasons of appeal was overruled (*Gager, J.*), and the cause was afterward tried to the court, *Curtis, J.;* facts found and judgment rendered for the defendants, affirming the action of the Court of Probate, from which the plaintiffs appealed. *No error.*

Constand A. Moeller died at New Haven, June 1st, 1914, and his will was offered for probate in the Court of Probate for the district of New Haven. By its terms his property was devised and bequeathed to certain trustees, who were also appointed executors, to hold until the death of the last survivor of his children; in the interval, to pay certain annuities to these children, and to accumulate any surplus income; and, at the death of the last survivor of the children, to distribute the estate among all his living grandchildren, per capita. At his death, there were living several grandchildren, all of whom were minors, and on July 2d, 1914, the Court of Probate appointed Arthur B. O'Keefe, an attorney, guardian *ad litem* of these minors, naming them. On July 14th, 1914, the will was duly admitted to probate; and thereafter the estate was fully settled and the remaining property was turned over to the trust. Throughout the settlement of the estate O'Keefe acted as guardian *ad litem* for the minor grandchildren, under his appointment as such, and was recognized as so acting by the Court of Probate.

On September 12th, 1916, the trustees filed an annual account. In this account they fully stated the condition of the estate; and they also reported that there was due to each of them a fee of $6,000 for his services as trustee, and to their counsel, a fee of $8,500, and asked the Court of Probate to approve these fees. The court ordered that notice be given of a hearing upon the account to be held on September 26th, 1914, and hearings upon it were held on that day and, by continuance, on subsequent days to and including February 24th, 1917. O'Keefe, as guardian *ad litem* of the minor grandchildren, was present at all of these hearings and was prepared to contest the allowances claimed by the trustees and their counsel. The conservator of one of the children, who was an incompetent, was also present at the hearings to contest the allowances in her behalf. Certain other children of the testator, the parents of some of the minor grandchildren, employed an attorney to appear and contest the allowances, and this attorney did appear at the hearings and assumed the burden of conducting the opposition; and he was the only one who introduced evidence in opposition to the allowance of the fees claimed, or who examined or cross-examined witnesses, or who made an oral argument. O'Keefe, however, before the hearings were closed, informed the Court of Probate that he would file written objections; and he did do so, before the court made its decision. By its decree the court reduced the fee to be allowed to each of the trustees to $4,500, and that to be allowed to their counsel to $6,500. At the time of the exhibition of the trustees' account and of the various hearings, the only living grandchildren were those for whom O'Keefe had been appointed guardian *ad litem;* but since then, other grandchildren have been born.

Thereafter the children of the testator who had em-

ployed the attorney, brought an application to the Court of Probate praying it to order the trustees to reimburse them for the amount expended by them in paying for his services. This the Court of Probate refused to do, and from its decree denying their petition this appeal is taken.

*Charles S. Hamilton,* for the appellants (plaintiffs).

*Harrison Hewitt* and *George W. Crawford,* for the appellees (defendants).

MALTBIE, J. There is no occasion to correct the finding. The trial court has marked "proven" all the paragraphs of the request for a finding which the appellants ask to have inserted, and we have treated them as though they were actually incorporated in it. *Radican* v. *Hughes,* 86 Conn. 536, 86 Atl. 220. The paragraph of the finding which the appellants ask to have stricken out, states the final conclusion of the trial court; and the worst that could be said of it is that it should have been set out in a separate section. Practice Book (1908) p. 272, Form 2.

During the period covered by the trustees' account, the appellants apparently received the full payment of the annuities which were provided for them in the will, and there is nothing in the record to indicate that their rights in the future will be put in jeopardy by the allowance of the amounts claimed by the trustees and their counsel. They had, therefore, no personal interest in their opposition to the making of these allowances, and they must be regarded as volunteers who acted, and incurred expense, of their own free will, in defense of the rights of those who were the real parties in interest, the grandchildren. To such a situation, the equitable doctrine of contribution has no application;

for that doctrine assumes that those who incur expense are interested in the warding off of a peril, or the securing of a benefit, which is common to themselves and to those whom they are seeking to compel to share in that expense. *Yore* v. *Yore*, 240 Mo. 451, 144 S. W. 847; 2 Story's Equity Jurisprudence (14th Ed.) § 648. Nor, under any other of its principles, does equity, any more than the law, ordinarily lend its aid to a mere volunteer. The question has most frequently arisen where one who has discharged the debt of another has sought the benefit against the debtor of such security as the creditor had for the debt; and here it is established that the mere voluntary payment of the debt by a third party gives no right which equity can recognize. *Hudson Trust Co.* v. *Cushman*, 93 Conn. 119, 122, 105 Atl. 344; *McKinnon* v. *New York Assets Realization Co.*, 133 C. C. A. 255, 259, 217 Fed. Rep. 339, 343; *Skinner* v. *Tirrell*, 159 Mass. 474, 34 N. E. 692; *Acer* v. *Hotchkiss*, 97 N. Y. 395, 403; *Shinn* v. *Budd*, 14 N. J. Eq. 234, 236; *Fay* v. *Fay*, 43 N. J. Eq. 438, 440; *Stevens* v. *King*, 84 Me. 291, 293, 24 Atl. 850; 2 Story's Equity Jurisprudence (14th Ed.) § 723. The statement of Chancellor Johnson in *Gadsden* v. *Brown*, Speers' Eq. (S. Car.) 37, 41, was expressly directed to the doctrine of subrogation, but the principle he states applies more generally: "If one with the perfect knowledge of the facts, will part with his money, or bind himself by his contract, in a sufficient consideration, any rule of law which would restore him his money or absolve him from his contract, would subvert the rules of social order"; and this statement is quoted and approved in *Aetna Life Ins. Co.* v. *Middleport*, 124 U. S. 534, 549, 8 Sup. Ct. 625. Unless, then, there is something in the case before us to take it out of the ordinary rule, the appellants cannot recover.

The facts before us, instead of disclosing any equi-

ties which do take the claim of the appellants out of this rule, establish the contrary. O'Keefe, acting in the capacity of guardian *ad litem* for all the grandchildren living when the trustees' account was presented, appeared before the Court of Probate at all the hearings upon it; he was prepared to contest the allowances in question; he was fully recognized by the Court of Probate as the representative of the grandchildren, and to the propriety of his appearing these appellants raised no objection; before the matter was determined, he filed with that court a statement in opposition to the allowances claimed, and it is significant that the amounts finally allowed were those which were suggested by him in that statement. To be sure, he permitted the older and more experienced attorney employed by the appellants to assume the burden of conducting the proceedings; but we cannot see that he failed in any way to fulfil the duty assumed by him as guardian *ad litem*, that the result would have been different had the attorney employed by the appellants not appeared, or that there was any real need for the employment of that attorney, unless, indeed, we are to hold that O'Keefe had no standing before the Court of Probate as the representative of the grandchildren.

Under the circumstances of this case, it does not seem necessary to determine whether or not O'Keefe is to be regarded as having been formally appointed guardian *ad litem* for the grandchildren, under the provisions of § 4874 of the General Statutes. Whatever would be the situation should they question the effect upon their rights of any irregularity in the appointment, we think that the appellants are in no position to contend that what O'Keefe did is to be regarded as a mere nullity. *Price* v. *Winter*, 15 Fla. 66, 104; *Beverleys* v. *Miller*, 20 Va. (6 Munf.) 99. We think that the action of the Court of Probate in recognizing him as

guardian *ad litem* was virtually, as to these appellants, the equivalent of his appointment for the particular matter then before it. As is said in *In re McNaughton's Will*, 138 Wis. 179, 194, 197, 118 N. W. 997, 1003, 1004: "Those who by reason of infancy cannot appear for themselves must be represented by guardians *ad litem* in order to be bound, whether there is any statutory requirement in that regard or not. . . . The position of guardian *ad litem* is an important one. The obligation to accept the trust and to faithfully discharge the duty . . . is an incident of the profession of law and the lawyer's official station. . . . Where the common law prevails abroad and in the States, with but few exceptions, the time-honored rule is left in full force, that the court may command the service of any member of its bar when it needs an instrument of the sort to stand for the helpless."

The fact that other grandchildren have been born since the account was presented, or that still others may yet be born, who will become members of the class ultimately to receive the trust fund, does not avail the appellants. Whether or not there would be any personal obligation resting upon these grandchildren, the payment of the appellants' expenses from the fund itself would deplete, not merely their share, but, as well, that of the grandchildren represented by O'Keefe; and the justice of the appellants' claim against the former could not obviate the injustice of a recovery at the expense of the latter. There is, therefore, no equity which can avail to take this case out of the ordinary rule as to those who merely volunteer their services in behalf of others.

As the conclusion of the trial court is correct upon the facts, it is unnecessary to determine whether the Court of Probate would have had jurisdiction to make an order directing that the appellants be reimbursed for their expenditures from the trust fund.

The statement filed by O'Keefe with the Court of Probate was clearly admissible to show that he took an active part in objecting to the allowances claimed. The certificate of his appointment as guardian *ad litem* was properly admitted to show in what capacity Mr. O'Keefe was at least assuming to act; and the question asked of him, "As you understood it, at the time you were acting as guardian *ad litem* of all of the grandchildren of Constand A. Moeller?" was, in effect, no more than a question as to the capacity in which he appeared and was acting, and as such, was properly admitted.

There is no error.

In this opinion the other judges concurred.