MITCHELL and another *v.* ROBERTS, as Assignee, etc.

*(Circuit Court, E. D. Arkansas.	April Term, 1883.)*

1. MORTGAGE OF NOTES—PLEDGE.
    A mortgage of personal property is a sale of the property by way of securing a debt, with a condition that if the mortgagor pays the debt the sale shall be void; a pledge contains no words of sale, but an authority, if the debt is not paid, to sell the pledge for that purpose. In the former case the title passes to the mortgagee; in the latter, the title remains in the pledgeor, although possession is given to the pledgee.

2. SAME—TENDER AT COMMON LAW.
    At common law a tender of the debt on the law-day satisfies the condition of the mortgage, and discharges the property from the incumbrance as effectually as payment, but the debt remains, and may be recovered by action at law.

3. SAME—TENDER AFTER BREACH OF CONDITION.
    The general rule is that at common law a tender of the debt after breach of the condition does not operate as a discharge of the mortgage. But this rule is not uniform, and in New York, Michigan, and New Hampshire a tender of the debt after maturity has the same effect as a tender on the law-day, and releases the lien of the mortgage.

4. SAME—TENDER AFTER MATURITY—EFFECT ON LIEN.
    A tender of the debt after its maturity extinguishes the lien on personal property pledged to secure its payment, and the pledgeor may recover the pledge or its value in any proper form of action, without keeping the tender good or bringing the money into court; and the pledgee may have his action for the debt.

5. DEBT PAYABLE IN MONEY—EFFECT OF TENDER.
    A debt payable in money is never discharged by a tender. It is only where a debt is payable in specific articles of personal property that a tender operates as a satisfaction of the demand.

6. PLEDGE FOR DEBT OF ANOTHER.
    Where the owner of property pledges it for the debt of another, he is to be treated as standing in the relation of a surety.

7. SAME—TENDER BY PRINCIPAL DEBTOR—DISCHARGE OF SURETY.
    If the principal debtor, after the maturity of the debt, tenders the amount due to the creditor, and he refuses to receive it, the surety is discharged.

8. SAME—WHEN CONSIDERED A SURETY.
    When property of any kind is mortgaged or pledged by the owner to secure the debt of another, such property occupies the position of surety, and whatever will discharge a surety will discharge such property.

The plaintiff B. E. Mitchell was the payee and owner of two negotiable promissory notes executed by one A. H. Blythe, each for the sum of $1,000, which he indorsed and delivered to the Commercial Bank of Texarkana for collection. Subsequently his brother, S. T. Mitchell, borrowed $500 on his own account from the bank, for which he executed his note, and to secure its payment assumed, as agent for B. E. Mitchell, to pledge the two Blythe notes belonging to the latter, and then held by the bank for collection. S. T. Mitchell tendered payment of his note after its maturity, and afterwards, as agent for B. E. Mitchell, demanded the surrender of the pledged notes. The defendant declined to accept the tender or deliver the notes, upon the ground that B. E. Mitchell was liable to the bank upon his indorsement of the note of one H. M. Beidler for $350; and afterwards advertised the notes for sale to pay the note of S. T. Mitchell and the

Beidler note. Thereupon the bill in this case was filed, setting up the tender, and praying for an injunction to restrain the sale of the pledged notes, and for a decree requiring the defendant to surrender the same to the plaintiff B. E. Mitchell. The tender was not brought into court, and the bill does not offer to pay the S. T. Mitchell note. The answer admits the tender of the amount due on the S. T. Mitchell note, and alleges it was not accepted and the pledge surrendered because B. E. Mitchell was indebted to the bank in the further sum of $350 on his indorsement of the Beidler note. The tender was not refused because it was coupled with any condition, but because it did not include the amount of the Beidler note.

*Joyner & Byrne*, for plaintiffs.

*O. D. Scott* and *J. M. Moore*, for defendant.

CALDWELL, J. The authority of S. T. Mitchell to pledge the Blythe notes, belonging to his brother, as security for his own note of $500, is not open to contestation. The original bill expressly admits his authority to do so; and the amended bill admits it by implication and ratifies the act, and pleads the tender of the amount due on the S. T. Mitchell note in extinguishment of the lien of the pledge.

It is equally clear the Blythe notes were not pledged as security for the Beidler note discounted to the bank by B. E. Mitchell. The answer alleges that Mitchell's liability as indorser of this note was fixed by due presentment for payment and notice of non-payment. This is denied by the replication, and there is no proof to support the answer. It is clear, therefore, upon the case as it stands, that the assignee had no right to retain the Blythe notes as a pledge for the payment of the Beidler note, because it is not shown that the bank or its assignee had any claim against B. E. Mitchell on account of his indorsement of that note or otherwise. The following, then, are the facts upon which the case must turn: The debt due the bank was the debt of S. T. Mitchell. The notes pledged to secure its payment were the property of B. E. Mitchell. The debtor, S. T. Mitchell, tendered to the defendant, who is assignee of the bank, the full amount of the debt after its maturity, and as the authorized agent of B. E. Mitchell demanded the return of the notes pledged as security.

Upon these facts is the plaintiff B. E. Mitchell entitled to recover the notes belonging to him, and which were pledged to secure the payment of the debt of S. T. Mitchell, without paying the latter's debt? This question is of easy solution, both upon principle and authority. The transaction was not a mortgage, but a pledge, and must be tested by the rules applicable to that class of bailments. This distinction is important. Mr. Parsons says: "The difference between a pledge and a mortgage has not until lately been strongly marked. In recent times, however, and in this country, this distinction is assuming a new importance. In all our commercial cities the pledging of personal property, especially of stocks, has been very common, and recent cases have established, or at least affirmed, rights

and liabilities peculiar to such contracts, and quite different from those which attend a mortgage." 2 Pars. Cont. 112; Jones, Chat. Mortg. § 7.

In a late work the difference between a mortgage and a pledge of stocks is concisely stated. "A mortgage," says the author, "is a sale of the stock by way of securing a debt, with a condition that if the mortgagor pays the debt the sale shall be void; a pledge contains no words of sale, but an authority, if the debt is not paid, to sell the pledge for that purpose. In the former case the title passes to the mortgagee; in the latter, the title remains in the pledgeor, although possession is given to the pledgee." Dos Passos, Stock Brokers, 658.

At common law a mortgage was a conveyance to the mortgagee, to be void upon condition the mortgagor paid the debt at the specified day, and to become absolute on failure so to pay. The mortgagee was invested with the legal title. It was not necessary to the validity of the mortgage that the possession should pass to the mortgagee, though the right of possession was in him. The mortgagee acquired the title of the property, and the mortgagor parted with the title as in the case of sale, reserving only the right to defeat the transfer and reacquire the property by paying the debt on the day named. If the mortgagor paid the debt or made a legal tender of it at the specified day, the condition of the mortgage was satisfied, and the property forever discharged from the incumbrance; but upon default of payment according to the condition, the absolute title, at law, vested in the mortgagee.

A pledge is a bailment of personal property as a security for some debt or engagement. It is completed by a delivery of the property; it does not transfer the title; it only gives the pledgee a lien upon the property for his debt, and the right to retain the possession until his debt is paid. But the non-payment of the debt, even after it is due, does not work a forfeiture of the pledge; the title remains in the pledgeor until it is divested either by a foreclosure in equity or by a sale on due notice. Story, Bailm. §§ 286, 287, 308–310; Edw. Bailm. §§ 245, 279.

Where the thing pledged is a chose in action, the term "collateral security" is now most commonly applied to the transaction, and is the term used by the parties in this case; but this change of name has worked no change in the law.

At common law a tender of the mortgage debt on the law-day satisfies the condition of the mortgage, and discharges the property from the incumbrance as effectually as payment; but the debt remains, and its payment may be enforced by an action at law against the mortgagor. And in pleading a tender on the law-day in discharge of the condition of a mortgage, the mortgagor is not required to allege continued readiness to pay, nor need he bring the money into court. The tender, when made, discharged the incumbrance, not conditionally, but absolutely and forever.

"If A. borroweth a hundred pound of B., and after mortgageth land to B. upon condition for payment thereof, if A. tender the money to B. and he refuseth it, A. may enter into the land, and the land is freed forever of the condition, but yet the debt remaineth, and may be recovered by action of debt." Harg. Co. Lit. [209*b*,] § 338. And upon this point the current of authorities is unbroken from Lord Coke's time to the present. Jones, Mortg. §§ 886, 891. and cases cited; *Schearff* v. *Dodge*, 33 Ark. 346.

But the general rule is that at common law a tender of the mortgage debt after breach of the condition does not operate as a discharge of the mortgage. The ground of this rule is that upon failure to pay at the specified day, according to condition of the mortgage, the mortgagee's title at law becomes absolute, and he cannot be required to accept the tender and restore the property. It is true that after breach of the condition the mortgagor has in equity a right to redeem, but the only effect of a tender after that time is to stop interest and protect from cost so long as it is kept good. Jones, Mortg. §§ 9, 892; Jones, Chat. Mortg. § 632; Whart. Cont. § 972; *Rowell* v. *Mitchell*, 68 Me. 21; *Erskine* v. *Townsend*, 2 Mass. 493; *Currier* v. *Gale*, 9 Allen, 522; *Holman* v. *Bailey*, 3 Metc. 55; *Shields* v. *Lozear*, 34 N. J. Law, 496; *Storey* v. *Krewson*, 55 Ind. 397; *Perre* v. *Castro*, 14 Cal. 519; *Himmelmann* v. *Fitzpatrick*, 50 Cal. 650.

But upon this point the authorities are not quite uniform. In New York, Michigan, and New Hampshire a tender of payment, after maturity of a debt, has the same effect as a tender on the law-day, and releases the lien of a mortgage given to secure it. Whart. Cont. § 972; Jones, Mortg. § 893; *Kortwright* v. *Cady*, 21 N. Y. 343; *Edwards* v. *Ins. Co.* 21 Wend. 467; *Moynahan* v. *Moore*, 9 Mich. 9; *Potts* v. *Plaisted*, 30 Mich. 149; *Swett* v. *Horn*, 1 N. H. 332; *Robinson* v. *Leavitt*, 7 N. H. 73.

The ground of this ruling, in the states last mentioned, is that a mortgage is no longer what it was originally at common law—a conveyance to the mortgagee, defeasible only upon payment at the specified day; but that it is merely a security for the debt to the mortgagee, creating a lien on the property analogous to that created by a pledge of goods as a security for a debt, and that a tender after breach of the condition has the same effect as a tender made in case of a pledge of personal property. In Jones, Mortg., it is said the New York rule in regard to the effect of a tender after breach of the condition does not apply in that state, nor in other states, except Michigan and Oregon, to chattel mortgages; which, it is held, do not create a lien merely, but vest the legal title in the mortgagee. Jones, Chat. Mortg. §§ 634, 637.

But whether a mortgage is to be regarded as retaining all its common-law incidents, or as a mere security for a debt, and whether a tender of the debt after its maturity does or does not discharge the lien of the mortgage, need not be decided.

In the case at bar the question is whether a tender of the debt, after its maturity, extinguishes the lien on personal property pledged to secure its payment. Upon this question there is no conflict in the authorities. The rule is settled that a tender of the debt, for which the property is pledged as security, extinguishes the lien, and the pledgeor may recover the pledge, or its value, in any proper form of action, without keeping the tender good or bringing the money into court; because, like a tender of the mortgage debt on the law-day, the tender having once operated to discharge the lien it is gone forever. This rule accords with justice and fair dealing. It would be an exceeding great hardship on the debtor if the creditor had the right to refuse to accept payment of the debt after it was due, and at the same time retain the debtor's property or a lien upon it for the debt. Advantageous sales would be prevented, collections delayed, and credit lost by the inability of the debtor to free his property. In many cases debtors would be ruined before they could obtain relief by the slow process of a bill in equity to redeem. And on a bill to redeem a debtor would have to pay interest and costs down to the decree, unless he had kept the tender good. Thus the debtor, in order to protect himself against interest and costs, would be deprived of both his property and the use of his money at the pleasure of his creditor, or until the end of a chancery suit could be reached. On the other hand, a creditor who refuses to receive payment of his debt when lawfully tendered, cannot complain at the loss of his security for that debt, "because it shall be accounted his own folly that he refused the money when a lawful tender of it was made unto him."

A debt payable in money is never discharged by a tender. It may operate to discharge liens and sureties, and deprive the creditor of all collateral securities, but the debt remains. It is only where a debt is payable in specific articles of personal property that a tender operates as a satisfaction of the demand. In such cases, a tender properly made discharges the debt, and the articles tendered become the property of the creditor, and afterwards are kept at his risk and expense. *Barney* v. *Bliss,* 1 D. Chip. (Vt.) 399; S. C. 12 Amer. Dec. 696; *Sheldon* v. *Skinner,* 4 Wend. 525; S. C. 21 Amer. Dec. 161; *Lamb* v. *Lathrop,* 13 Wend. 95; S. C. 27 Amer. Dec. 174, and note.

The pledgee may, therefore, notwithstanding the tender, have his action at law against the debtor for his debt; for while the tender extinguishes the lien and renders the further possession of the pledgee tortious, it does not relieve the debtor from personal liability to pay the debt. Bacon's Abr. tit. "Bailment, B;" Edw. Bailm. § 230; Story, Bailm. § 341; Jones, Mortg. § 893; Jones, Chat. Mortg. § 7; *Kortwright* v. *Cady,* 21 N. Y. 348; *Moynahan* v. *Moore,* 9 Mich. 9; *Potts* v. *Plaisted,* 30 Mich. 149.

The same rule applies to mechanics' liens for work and labor bestowed on personal property. Upon a tender of the amount due, the lien is discharged and the owner may recover his property, or dam-

ages for its detention, and the bailee who bestowed the labor must resort to his action to recover his money. Phil. Mech. Liens, § 511; *Ball* v. *Stanley*, 5 Yerg. 199; *Moynahan* v. *Moore*, 9 Mich. 9.

There are other grounds upon which the plaintiff B. E. Mitchell is entitled to the relief which he seeks. Where the owner of property pledges it for the debt of another, he is to be treated as standing in the relation of a surety. Edwards, Bailm. § 302; *King* v. *Baldwin*, 2 Johns. Ch. 554; S. C. 17 Johns. 384; *Strong* v. *Wooster*, 6 Vt. 536; *Ingalls* v. *Morgan*, 10 N. Y. 178; *Eddy* v. *Traver*, 6 Paige, 521. And it is well settled that if the principal debtor, after the maturity of his debt, tenders the amount due to the creditor and he refuses to receive it, the surety is discharged. Brandt, Suretyship, § 295; *Sears* v. *Van Dusen*, 25 Mich. 351; *Joslyn* v. *Eastman*, 46 Vt. 258; *Curiac* v. *Packard*, 29 Cal. 194. And when property of any kind is mortgaged or pledged by the owner to secure the debt of another, such property occupies the position of surety, and whatever will discharge a surety will discharge such property. Brandt, Suretyship, §§ 21, 22; *Christner* v. *Brown*, 16 Iowa, 130; *Rowan Sharps' Rifle, etc., Co.* 33 Conn. 1; *Union Bank* v. *Govan*, 10 Smedes & M. 333; *White* v. *Ault*, 19 Ga. 551.

There is nothing in the decisions of the supreme court of the state in conflict with the conclusions reached. In *Schearff* v. *Dodge*, 33 Ark. 346, the court affirm the doctrine that a tender of the debt on the law-day discharges the mortgage, but hold that a tender of the money due on a contract for the purchase of land, where the vendor retains the legal title, does not discharge the vendor's lien, and that he cannot be divested of the legal title except upon actual payment of the purchase money. In *Hamlett* v. *Tallman*, 30 Ark. 505, defendant was entitled to a landlord's lien, under the statute, on the crops, consisting of cotton, for the rent, and was in possession of the cotton, but had not commenced proceedings under the statute to enforce his lien. The rent, which was payable in money, was tendered by the purchaser of the crop from the tenant, and the landlord refusing to accept the tender the purchaser brought suit to recover the cotton, and obtained a judgment below for its value, without deduction for the rent, and without bringing the tender into court. In the opinion in the case, the difference between the effect of a tender on a creditor's right afterwards to recover his debt, and its effect on a lien to secure the debt, is not adverted to, and the decision seems to be rested solely on the well-understood rules applicable in the former case, viz., that a tender is not equivalent to payment of the debt, and that its only effect is to stop interest and protect from costs so long as the tender is kept good. It is undoubtedly true that a tender does not operate as a satisfaction of a money debt, but it is equally true that it does in many cases have the effect to discharge liens and deprive the creditor of all collateral securities, and for this purpose it is the exact equivalent of payment. The case decides that the landlord's lien given by statute

is not discharged by a tender of the rent, but the reasoning by which that conclusion was reached is not given, and is not very obvious, and for that reason the case as an authority must be restricted to cases on all-fours, as was the case of *Bloom* v. *McGehee*, 38 Ark. 329, where *Hamlett* v. *Tallman* was followed without inquiry or discussion.

The authorities supporting the conclusions reached in the case at bar are not cited or referred to, and it is extremely plain the court did not intend to overrule them or dispute their authority.

Let a decree be entered requiring the defendant to deliver to the plaintiff B. E. Mitchell the two Blythe notes, pledged to secure the payment of the note of S. T. Mitchell.

---

A pledge differs from a chattel mortgage in three essential characteristics: (1) It may be constituted without any contract in writing, merely by delivery of the thing pledged; (2) it is constituted by a delivery of the thing pledged, and is continued only so long as the possession remains with the creditor; (3) it does not generally pass the title to the thing pledged, but gives only a lien to the creditor, while the debtor retains the general property. But, as regards choses in action, the distinction that a mortgage is a transfer of the title, while a pledge is a mere lien without a transfer of title, does not hold good; for, in most cases, a pledge of choses in action can only be made effectual by a transfer of the legal title. Thus, in a pledge of negotiable paper, the title necessarily passes by a delivery of the paper if this does not require indorsement, or if it does require indorsement, then by delivery after such indorsement. To make the pledge an effectual security, it is necessary that the pledgee should have the legal title. The same is true in general as to other transfers of choses in action, such as transfers of corporate stocks. A transfer of the title to such incorporeal property is generally an essential part of the delivery of it in pledge. An absolute transfer of such property as security for a debt, is a pledge and not a mortgage. The general property may be regarded as remaining in the debtor, though the legal title be transferred to the creditor. A transfer of such property by an assignment which is not in form or substance a mortgage, will constitute a pledge of it.[1]

It is true that there may be a mortgage of a promissory note or other chose in action, but to constitute a mortgage of it the conveyance must be made substantially in the form of a mortgage; that is, it must be a conveyance upon a condition or defeasance expressed in the instrument of conveyance, or by a separate instrument which would be construed as part of the conveyance. Thus, if a policy of insurance be assigned, and the instrument of assignment or a separate defeasance provides that the assignment shall be null and void upon the payment of the debt secured, but otherwise shall continue in full force, the transfer constitutes a mortgage and not a pledge. "The purport and substance of the contract, and the intention of the parties, as disclosed by the language they have made use of to express it, clearly indicate a sale or mortgage rather than a pledge."[2] An assignment, absolute in form, of a promissory note, or other contract, as collateral security, is a pledge rather than a mortgage of it. The fact that the title passes in form, does not make the transaction a mortgage. A transfer of title is necessary in order that the creditor may have full control of the contract, and the means of promptly enforcing it.[3]

[1] Wilson v Little, 2 N. Y. 443; Dewey v Bowman, 8 Cal. 151.

[2] Durgan v. Mut. Ben. Life Ins. Co. 38 Md. 242, per MILLER, J.

[3] Gay v. Moss, 34 Cal. 125.

A tender of the amount due on a debt for which property is held in pledge, or for which collateral security has been given, at the time the debt is due, or afterwards, wholly discharges the lien of the pledge, and revests the title to the thing pledged in the pledgeor, so as to entitle him to maintain trover or replevin therefor.[1] In this respect a tender is equivalent to actual payment. A tender of a part of the amount of the debt will not have the effect to revest the title to any part of the property pledged;[2] the debt must be paid as a whole, and the tender, to be effectual, must be co-extensive with the whole debt secured.[3] In one respect a tender is not equivalent to payment; for, although the lien is discharged by either, the debt is not discharged by a tender, but the pledgee may still maintain his action for this.

A creditor, by refusing a tender properly made of the amount of a debt secured by a pledge, converts it to his own use. He makes it his own so far as to run the chance of any depreciation that may afterwards occur. He cannot sue for and recover the debt without making a proper allowance for the value of the pledge as it was at the time of the tender in reducing or satisfying the debt.[4] If in such case there be a surety of the debt, he is released; for the surety is entitled to have the security delivered up to him upon his paying the debt; and when the creditor has, by his own act, destroyed the security or rendered it valueless, or put it out of his power to give the surety the benefit of the substitution, the latter is discharged.[5]

Upon the pledgee's refusal of a tender of the whole amount of the debt secured, the debtor may maintain trover for the property, and he is entitled to damages to the full value of the property, without any abatement for the amount for which the property was pledged. The creditor must resort to an action to recover the debt. The refusal of the tender discharges the lien upon the property, and places the parties in relation to the property in the same position as if the debt has been paid, and no pledge had ever existed.[6]

A tender, to have the effect of discharging the lien of a pledge, must be absolute and unconditional, and must in all other ways conform to the general rules relating to the mode of making a tender. The money need not be actually produced, if the debtor has it ready and offers to pay it, but the creditor dispenses with the production of it in any manner; as, for instance, by expressly saying to the debtor that he need not produce the money, as he would not accept it.[7] But a bare refusal to receive the sum offered, and a demand of a larger sum, are not enough to excuse an actual tender of the money. Thus, where a debtor met his creditor for the purpose of redeeming stock held in pledge, and the amount due upon it having been agreed upon, the debtor's agent and broker was about to fill up a check for the amount, when the creditor requested that the business should be postponed to the next day, and demanded the whole value of the stock, amounting to much more than the sum liquidated, under the pretense that he was responsible as surety for the debtor, on another and separate account, the tender was held to be ineffectual.[8]

A tender, accompanied with a demand for a receipt, or a discharge of a lien, or a return of securities, is not an unconditional tender. A tender should not be accompanied with a demand for anything more than the production and delivery of any negotiable paper representing the debt which is

---

[1] Ratcliff v. Davies, Cro Jac. 244; S. C. 1 Bulstr 29; Coggs v. Bernard, 2 Ld. Raym. 909; S. C Holt, 528; Ryall v. Rowles, 1 Atk. 165, 167; Haskins v. Kel'y, 1 Rob. (N. Y.) 160; S. C. 1 Abb. Pr. (N. S.) 63; Ball v. Stanley, 5 Yerg. (Tenn.) 199; McCalla v. Clark, 55 Ga. 53.

[2] Appleton v. Donaldson, 3 Pa. St. 381.

[3] Bigelow v. Young, 30 Ga. 121.

[4] Griswold v. Jackson, 2 Edw. (N. Y.) Ch. 461;

affirmed, 4 Hill, 522; Hathaway v. Fall River Nat. Bank, 131 Mass. 14; Hancock v. Franklin Ins. Co. 114 Mass. 155.

[5] Griswold v. Jackson, supra.

[6] Ball v. Stanley, 5 Yerg. (Tenn.) 199.

[7] Thomas v. Evans, 10 East, 101; Kraus v. Arnold, 7 Moore, 59; Hancock v. Franklin Ins. Co. 104 Mass. 155.

[8] Dunham v. Jackson, 6 Wend. (N. Y.) 22.

sought to be paid.[1]  Moreover, the tender must at all times be kept good; that is, the debtor must constantly keep on hand the money tendered, separate from his other money, ready to pay over to the creditor whenever he might be ready to take it, and must bring the money into court.[2]

A tender need not include interest upon the debt if none was contracted for, and none has accrued by way of damages after a demand. Thus, upon a pledge of a watch by way of a sale of it for $82, with an agreement that the seller should have it again in 30 days, upon the payment of $87, a tender of the latter sum was held sufficient, the five dollars bonus being regarded as in lieu of interest.[3]

Upon the tender of the amount of a debt for which an accommodation note is held as security, the maker of such note, being in effect a surety, is discharged. The creditor, by a tender from the principal debtor, has in his hands the means of payment, and by his refusal to accept it discharges the surety; and in an action by the creditor upon the collateral note, the maker of that need not plead the tender, or bring the amount into court.[4]

·LEONARD A. JONES.

[1] Cass v. Higenbotam, 27 Hun, (N. Y.) 406; Brooklyn Bank v. De Grauw, 23 Wend. (N. Y.) 342.
[2] Cass v. Higenbotam, supra.

[3] Hines v. Strong, 46 How. N. Y. Pr. 97; affirmed, 56 N. Y. 670.
[4] Appleton v. Donaldson, 3 Pa. St. 381.