NEW YORK ASSETS REALIZATION CO. v. McKINNON.

(Circuit Court of Appeals, Second Circuit. May 15, 1913. On Rehearing, December 8, 1913.)

No. 192.

1. CORPORATIONS (§ 123*)—REFUSAL TO SURRENDER PLEDGED STOCK—CONVERSION.

Where corporate stock belonging to H. was pledged by him to secure a debt, and the pledgee wrongfully repledged the stock certificates with a trust company for a debt of the pledgee, and on the maturity of this debt the pledgee tendered payment and demanded surrender of the certificates, the trust company's refusal to surrender the same was a conversion for which the original owner could sue, regardless of the fact that at the time of the trust company's refusal there were various claimants for the collateral.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 618; Dec. Dig. § 123.*]

2. CORPORATIONS (§ 123*)—REPLEDGE—TENDER.

Where a pledgee of stock certificates wrongfully repledged them for his own debt, and on the maturity thereof tendered payment, the fact

———

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that he demanded a return of the collaterals at the same time did not make the tender conditional.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 569, 618; Dec. Dig. § 123.*]

In Error to the District Court of the United States for the Southern District of New York.

. Action by the New York Assets Realization Company against John W. McKinnon, individually and as agent for the shareholders, etc., of the Bank of North America. From a judgment dismissing the complaint, plaintiff brings error. Reversed.

F. E. M. Bullowa, of New York City (Ferdinand E. M. Bullowa, Emilie M. Bullowa, and Richard S. Harvey, all of New York City, of counsel), for plaintiff in error.

Underwood, Van Vorst & Hoyt, of New York City (A. B. Siegel and J. Markham Marshall, both of New York City, of counsel), for defendant in error.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment dismissing the complaint in an action against the defendant individually and as agent of the stockholders of the Bank of North America for the wrongful conversion of 500 shares of Chase National Bank stock, belonging to Arthur P. Heinze, the plaintiff's assignor.

The plaintiff's case, taken most favorably to it, as the rule is, was that Heinze was the owner of five certificates for 100 shares each of the stock in question, which he had delivered to one Morse, together with other collateral, to secure payment of his note for $150,000; that Morse separated these shares from Heinze's note, and used them, together with certificates for other 500 shares of the same stock as .collateral for his own note to the Metropolitan Trust Company for $150,-000 maturing December 16, 1907, and that the Bank of North America, its receiver, and finally the defendant knew from the beginning that the 500 shares in question were the property of Heinze. Further, that Morse, when his note fell due, tendered payment in full to the trust company, and demanded the collateral, which the trust company, under advice of counsel, refused to deliver. Subsequently January 30, 1908, the Bank of North America, claiming to be the owner of the other 500 shares of Chase stock, tendered payment of the note, and demanded the collaterals, which the trust company refused. The receiver of the bank, for whom the defendant was subsequently substituted as plaintiff, brought an action against the trust company for the wrongful conversion of the 1,000 shares of Chase National Bank stock as collateral to Morse's note. The trial court directed a verdict in favor of the plaintiff for the amount claimed, but by virtue of a stipulation between the parties the judgment provided that upon payment of $150,000 and interest to it, the defendant should return the 1,000 shares of the Chase National Bank stock to the plaintiff. This amount the defendant did

pay, and received the collateral, which he subsequently sold without notice to Heinze. The District Judge dismissed the complaint, saying:

"It has been once decided in an action in which Mr. Heinze was a party that the other 500 shares, that is, other than the 500 furnished by Heinze, were not the property of Morse, but were the property of the National Bank of North America. We spent Friday here listening to evidence which tended to show that perhaps that did not belong to the National Bank of North America, but did belong to Morse. For the purposes of this motion I am satisfied to say that it did not belong to Morse, but if it did, I hold as a matter of law that when McKinnon got the note and the 1,000 shares he was entitled to pay the amount of that note out of all the collateral, and had a right under the note to sell the collateral for that purpose, so that under no conceivable circumstances is Mr. Heinze entitled to what he is suing for here, but I decline to go through the form of dismissing this complaint on the merits. The result is the complaint is dismissed."

[1] This overlooks the fact that the trust company's refusal to deliver the collaterals to Morse, the pledgor, when he offered to pay his note at maturity, discharged the lien on the collaterals, though not the debt. Morse had then, as pledgor, a clear cause of action in conversion. When the defendant paid the note, it certainly got no greater right over the collaterals (except as to the "other 500 shares," if they were its own) than the trust company had. In Mitchell v. Roberts (C. C.) 17 Fed. 776, 780, Caldwell, J., said:

"In the case at bar the question is whether a tender of the debt, after its maturity, extinguishes the lien on personal property pledged to secure its payment. Upon this question there is no conflict in the authorities. The rule is settled that a tender of the debt, for which the property is pledged as security, extinguishes the lien, and the pledgor may recover the pledge, or its value, in any proper form of action, without keeping the tender good or bringing the money into court, because, like a tender of the mortgage debt on the law day, the tender having once operated to discharge the lien, it is gone forever. This rule accords with justice and fair dealing. It would be an exceeding great hardship on the debtor if the creditor had the right to refuse to accept payment of the debt after it was due, and at the same time retain the debtor's property or a lien upon it for the debt. Advantageous sales would be prevented, collections delayed, and credit lost by the inability of the debtor to free his property. In many cases debtors would be ruined before they could obtain relief by the slow process of a bill in equity to redeem. And on a bill to redeem a debtor would have to pay interest and costs down to the decree, unless he had kept the tender good. Thus the debtor, in order to protect himself against interest and costs, would be deprived of both his property and the use of his money at the pleasure of his creditor, or until the end of a chancery suit could be reached. On the other hand, a creditor who refuses to receive payment of his debt when lawfully tendered cannot complain at the loss of his security for that debt, 'because it shall be accounted his own folly that he refused the money when a lawful tender of it was made unto him.'"

It is no excuse for the trust company's refusal that there were variout conflicting claimants for the collaterals. Miller, J., speaking for the Court of Appeals in Cass v. Higenbotam, 100 N. Y. 248, 255, 3 N. E. 189, 192, said:

"The plaintiff as bailee had no right to deny the title of the defendant as bailor, if he, the bailor, was the true owner of the property. If there were conflicting claims to the same, the plaintiff had a complete remedy by bringing an action in the nature of a bill of interpleader, making the claimants

parties thereto, and in that form of an action it could be determined who was the true owner of the property. In that way he could have avoided all risk or hazard. Having thus failed to assert his rights, he is in no position to claim that the action brought against him bars the right of the defendant to counterclaim his demand in this action. Welch v. Sage, 47 N. Y. 143 [7 Am. Rep. 423]."

[2] The demand for the collaterals did not make Morse's tender conditional, as the defendant contends. Halpin v. Phenix Ins. Co., 118 N. Y. 165, 177, 23 N. E. 482, 485.

"A debtor who has transferred securities as collateral to the debt has a legal right, upon payment of the debt, to have such collaterals reassigned to him, and a tender of the debt is not destroyed by making a condition of its acceptance that the creditor transfer the collaterals to him, because that condition is one the debtor has a right to insist upon and the creditor no right to refuse, so a mortgagor who pays a bond and mortgage has a legal right to have the mortgage satisfied on the record. In no way, except by a certificate of the holder of the mortgage, can that result be accomplished. It is within the terms of the contract between the parties, and is a thing which, on payment of the debt, the mortgagee is under an obligation to do, and one which a court of equity would compel him to do. It is a condition, therefore, which the mortgagor has a right to attach to the tender of the debt, and does not destroy its effect. The tender found by the trial court was therefore sufficient."

As neither Morse nor the plaintiff's assignor was a party to the case of Hanna, Receiver, v. Metropolitan Trust Co., affirmed as Metropolitan Trust Co. v. McKinnon, Agent for Stockholders, 172 Fed. 846, 97 C. C. A. 194, it does no more than show that the receiver of the bank was, as against the Metropolitan Trust Company, entitled to the collaterals upon payment of the note. He certainly could get no greater rights in respect to Heinze's shares than the trust company had. Hand, J., said:

"Morse, however, pledged these certificates with the trust company along with Heinze's shares, for $150,000, and the question then arises whether, upon tender, the bank could demand, not only its own shares, but Heinze's shares. Concededly the bank had no interest in Heinze's shares, except that it would not obtain its own without tender of the principal and interest of the whole loan, since the trust company had the right to retain possession of all the shares until the loan was paid. Must it, then, having paid the loan, leave with the bank Heinze's shares for the bank to turn over to Heinze? Or could it subrogate itself to the pledge of the bank as against Heinze's shares, in order to release its own? I think there can be no doubt that it could. In paying the loan the bank was not a mere intermeddler. It was protecting its own property, and that it could not do, except by releasing Heinze's shares. Being wrongfully put in this position by one of its own agents, it was not a volunteer, and it might demand of the trust company Heinze's shares, and hold them under the same pledge as the trust company itself enjoyed. If this be true, then, upon tender of the full amount it was entitled to the possession of all of the collateral; one half as owner, and the other as substituted pledgee."

Taking the testimony in the most favorable light for the plaintiff, we think it was error to dismiss the complaint. The jury might have found that the stock was Heinze's, had been wrongfully hypothecated by Morse, that the lien of the trust company had been discharged, and

that the defendant, knowing all these facts, was guilty of wrongful conversion when he sold it.

Judgment reversed.

## On Rehearing.

PER CURIAM. We remain of the opinion that this case should not have been disposed of by the court as matter of law. A rehearing was granted for further consideration of the question whether the Metropolitan Trust Company's refusal to return the collateral to Morse when he tendered payment of his note would affect Heinze's rights as owner in a way different from the way it would affect Morse's rights as bailor. In other words, if the jury were to find that the stock belonged to Heinze, that Morse wrongfully pledged it with the trust company for payment of his own debt, tendered payment of the debt when due, and demanded the stock which the trust company refused to deliver, could Heinze say that the stock was his and not Morse's, and at the same time claim that the lien upon it was discharged because the trust company had refused to deliver it to Morse? It seems hard that Heinze should profit by the trust company's refusal to deliver his stock to Morse, who was not entitled to it as against him. If it had delivered the stock to Morse, it would have received payment of its loan, and would have been under no obligation to Heinze. Still, Heinze did not require the trust company to deliver the stock to him, nor authorize it to refuse delivery of it to Morse. He intervened in no way whatever. The trust company acted entirely of its own motion, without delivering the stock to Heinze, or even setting up Heinze's title. His position being twofold—first, that the stock was his and second, that Morse had no right to pledge it for his own debt—we think he is entitled to the benefit of the rule that the trust company's action in refusing to return it to Morse when he tendered payment of his debt discharged the lien. It can hardly be discharged as to Morse who created it, and yet continue as to Heinze who repudiates it. When the trust company thereafter delivered the stock to the defendant (not under the money judgment recovered against it, but by agreement), it was guilty of a conversion, and the defendant by selling it was also guilty of conversion, especially if he had notice of Heinze's rights.