### McKINNON v. NEW YORK ASSETS REALIZATION CO.

(Circuit Court of Appeals, Second Circuit. July 30, 1914.)

No. 232.

1. INJUNCTION (§ 26*)—RESTRAINING PROSECUTION OF ACTION AT LAW—DE-FENSES AVAILABLE IN LAW ACTION.

A court of equity will not enjoin the prosecution of an action at law against the complainant, to enable him to establish a defense which, under the statute, he might have pleaded as a counterclaim in the action at law.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24-49, 54-61; Dec. Dig. § 26.*]

2. SUBROGATION (§ 26*)—PERSONS ENTITLED TO SUBROGATION—VOLUNTARY PAYMENT OF DEBT OF ANOTHER—"VOLUNTEER."

One who is under no legal obligation or liability to pay a debt is, if he pays it, a mere "volunteer," and cannot invoke the principle of exonera-tion through subrogation to the rights and securities of the creditor.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 67; Dec. Dig. § 26.*

For other definitions, see Words and Phrases, First and Second Series, Volunteer.

Nature and theory of right of subrogation, see note to Merchants' & Miners' Transp. Co. v. Robinson-Baxter-Dissoway Towing & Transp. Co., 113 C. C. A. 434.]

3. SUBROGATION (§ 26*)—VOLUNTARY PAYMENT OF DEBT.

Corporate stock owned by a bank was wrongfully pledged by another, with stock of another owner, as collateral security for his own note. On maturity he tendered payment of the note, which was refused. Subse-quently the bank paid the note and received all of the collateral. *Held,* that the tender by the pledgor, while it did not discharge the debt, ex-tinguished the lien of the pledgee, that the bank could have then recov-ered its own stock without payment of the note, and that such payment was voluntary, and gave it no legal right to exoneration or contribution from the stock of the other owner.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 67; Dec. Dig. § 26.*]

Appeal from the District Court of the United States for the South-ern District of New York.

This suit comes here on appeal from an order and decree made in the District Court of the United States for the Southern District of New York and dated December 19, 1913, dismissing the bill of com-plaint for insufficiency of facts to constitute a valid cause of action.

On or about February 8, 1907, Arthur P. Heinze contracted to purchase from Clinton Gilbert and Charles W. Morse 2,815 shares of Chase National Bank stock at the price of $275 for each share, and on or about that day he paid $111,000 on account of the purchase price. On or about June 12th of the same year Heinze desired to borrow $150,000 to use in payment of a part of the purchase price, and made an arrangement with Charles W. Morse to give

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the latter his note for $150,000 to be secured by 500 of these shares of the stock of the Chase National Bank, which were to be purchased with the proceeds thereof, and 2,000 shares of the common stock of United Copper Company; and this note Morse was to have discounted and devote the proceeds to the payment of the balance of the purchase price. In order to obtain for Heinze the money required, Morse made an arrangement with the Metropolitan Trust Company to borrow the sum of $150,000 on his own note to be secured by 1,000 shares of Chase National Bank stock. Heinze then caused to be delivered to Morse the 500 shares of the Chase National Bank stock, which he was able to obtain because the arrangement had been completed to obtain money to pay for the same out of the proceeds of the note. Thereupon on June 16, 1907, Morse gave his note for $150,000 to the Metropolitan Trust Company, secured by those 500 shares and other 500 shares of the Chase National Bank stock belonging to the National Bank of North America, all which shares had been taken for this purpose by Morse without the authority or consent of either Heinze or of the National Bank of North America. The proceeds of Morse's note were applied to the payment for the balance of the purchase price owing by Heinze upon his purchase of the Chase National Bank stock. Morse, having taken the bank's 500 shares to secure money to pay Heinze's indebtedness, transferred the latter's note to the bank, which still owns it. Before the maturity of the note at the Metropolitan Trust Company that company was notified that Morse was not the owner of any of the 1,000 shares which he had pledged, but that 500 shares belonged to the bank and the other 500 shares belonged to defendant Heinze, which the bank was entitled to receive as security for an indebtedness due to it by Heinze. The latter also notified the trust company that 500 of the shares belonged to him, but made no tender of the amount owing either upon the Morse note or upon his own note for the same amount. Upon the maturity of the note, Morse and one John L. Elliott tendered the full amount and interest of the Morse note to the trust company and demanded the return of the 1,000 shares of the Chase National Bank stock. This request was not complied with, on the ground that the stock did not belong to Morse and Elliott, and that 500 of the shares were the property of Heinze. Thereafter the trust company refused a tender made by the receiver of the National Bank of North America. An action was then begun by the receiver against the trust company for the conversion of the 500 shares of stock belonging to the bank, which action was successful, and by stipulation the trust company delivered 1,000 shares of the stock of the Chase National Bank on the payment to it by the receiver of $150,000 with interest. And on appeal to this court the judgment was affirmed. 172 Fed. 846, 97 C. C. A. 194.

The receiver paid the trust company the amount of Morse's note and received the 1,000 shares of Chase National Bank stock, and assumed to hold in accordance with the opinion of this court "the possession of all of the collateral, one-half as owner, the other as substituted pledgee." The receiver having thus obtained possession of the shares sold the whole 1,000 shares. The sale was made on September 3, 1911, was in accordance with the terms of the Morse note, and after notice to Heinze, had been given; and the latter is alleged in the bill of complaint to have acquiesced in the sale.

Thereafter and on December 12, 1911, the New York Assets Realization Company, the defendant herein, as assignee of Heinze, commenced an action at law for the alleged conversion of these shares of stock through this sale, and demanded $275,000 damages. The complaint was dismissed; but on writ of error this court reversed the judgment, on the ground that Morse's tender had discharged the lien of the trust company (209 Fed. 791, 126 C. C. A. 515); and on rehearing this court adhered to its previous ruling (209 Fed. 795, 126 C. C. A. 515).

J. Markham Marshall and Alexander B. Siegel, both of New York City, for appellant.

Ferdinand E. M. Bullowa, of New York City (Ferdinand E. M. Bullowa, Emilie M. Bullowa, and Richard S. Harvey, all of New York City, of counsel), for appellee.

Before WARD, HUNT, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] This is a suit in equity in which the District Court was asked to enjoin the defendant from the prosecution of an action at law which it has brought against the complainant to recover for the alleged conversion of 500 shares of the capital stock of the Chase National Bank of New York, which shares are alleged to be of the value of $275,000 and to assume jurisdiction of the whole controversy existing between the parties in respect to the stock in question. The suit is brought upon the theory that the complainant is entitled to certain relief which a court of equity alone can grant; and it is necessary for us to determine whether the court below erred in dismissing the bill.

When Morse pledged with the trust company the Heinze shares and the shares belonging to the National Bank of North America, the trust company had no knowledge of the fact that Morse had no title to the stocks and was without power to make such use of them. The trust company advanced the money bona fide upon the Morse note without notice of the actual ownership of the shares and in reliance upon the apparent title of Morse. This wrongful pledge of the stock gave the trust company a lien upon it by estoppel under the authority of the well-known case of McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341 (1871).

And so long as the lien continued the National Bank of North America, if it desired to recover the possession of the shares, would have been under the necessity of paying the Morse note, and if it had, under such necessity, paid the note in order to protect its rights and save its property, it would, no doubt, have been justified in invoking the principle of subrogation and would have succeeded to the rights and securities of the trust company.

But the difficulty is that the lien which the trust company acquired on the collateral deposited with it was lost prior to the time when the bank paid the note. It appears from the allegations contained in the bill that after Morse's note had matured he tendered to the trust company the full amount, with interest, and demanded the return of the collateral, but the tender and the demand were refused. Likewise after the maturity of the note the receiver of the National Bank of North America tendered the trust company the amount due, with interest, and demanded the delivery of the stock, and this demand was also refused.

The refusal of the trust company to accept the tender made by Morse, the pledgor, did not discharge the debt, but it did discharge the lien. We have already passed on that question and decided that the lien was lost. New York Assets Realization Co. v. McKinnon, 209 Fed. 791, 126 C. C. A. 515 (1913). That question cannot be regarded as an open one in this court. We know of no conflict in the authorities, and the principle is as well established as any other in the law, that a valid legal tender of the amount of a lien debt discharges the lien and leaves the creditor to his personal claim against the debtor.

The receiver of the National Bank of North America, after the trust company refused its tender and demand for the return of the collateral,

brought an action against it for the conversion of the 500 shares which belonged to the bank. It had been stipulated before the case was tried that if a verdict should be found in favor of the plaintiff "judgment should be entered to the effect that the Metropolitan Trust Company should deliver the said note of Charles W. Morse, dated June 13, 1907, together with the said 1,000 shares of the stock of the Chase National Bank, to the said Charles A. Hanna, as receiver of the National Bank of North America in New York, upon payment to the said Metropolitan Trust Company, by the said Charles A. Hanna as receiver, as aforesaid, of the full amount due upon the said note." A verdict was directed in favor of the plaintiff, and judgment entered in accordance with the verdict and stipulation. Upon appeal to this court the judgment was affirmed. Metropolitan Trust Co. v. McKinnon, 172 Fed. 846, 97 C. C. A. 194 (1909). There were expressions contained in that opinion which indicated that the bank could only obtain possession of the collateral by paying the note, and that in paying the note the bank would not be a volunteer, nor an intermeddler, but would be protecting its own property. Thereupon the complainant paid the note and received the collateral; and having thus obtained possession of the 1,000 shares it sold them at the highest price obtainable, $362.50 a share. It applied the proceeds realized from the sale of Heinze's 500 shares to the payment of the Morse note, and what remained was applied to the payment of the note due from Heinze to the bank.

This led to the commencement of an action brought by the New York Assets Realization Company, as assignee of Heinze, to recover $275,000 for the conversion of the stock by the sale which the bank had made. The complaint was dismissed in the court below, but the case was reversed in this court. The reversal was based on the fact that the tender had discharged the lien, a fact which does not seem to have been brought to the court's attention in the earlier case in this court. That decision, therefore, established the right of the New York Assets Realization Company, as the assignee of Heinze, to maintain its action at law against McKinnon as the agent of the National Bank of North America to recover for the conversion of the stock, and that action is still pending. It is that action which we are now asked to enjoin.

It appears that, in the answer which McKinnon interposed to the complaint in that action, he failed to set up by way of counterclaim and in diminution of damage the amount of the Heinze note for $150,000 which was transferred to the National Bank of North America by Morse, and to the payment of which, as before said, the bank, after selling the stocks, had applied a part of the proceeds thus realized.

The Revised Statutes of the United States provide that:

"The practice, pleadings, and forms and modes of proceedings in civil causes, other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near may be, to the practice, pleadings, and forms and modes of proceedings existing at the time in like causes in the courts of record of the State within which such Circuit or District Courts are held." U. S. R. S. § 914 (U. S. Comp. St. 1901, p. 684).

Under the New York Codes the complainant might have set up Heinze's note as a counterclaim in the action brought to recover for

the conversion.  The Code of Civil Procedure provides (section 500) that the answer of the defendant may contain a statement of any new matter constituting a defense or counterclaim.  And it is provided in section 501 that the counterclaim must be one of the following causes of action against the plaintiff or against the person whom he represents and in favor of the defendant:

(1) "A cause of action arising out of the contract or transaction, set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action."

The matter which the complainant relies upon, and asserts he is entitled to counterclaim, he might have set up in the action at law, as it is a matter which arose "out of the contract or transaction set forth in the complaint."  He did not, however, see fit to do so, and has never made any application to the court below to amend his answer and permit him to set it up as a defense in the action at law.  The fact that he might have availed himself of this defense in the action at law and has failed to do so affords him no ground for coming into equity.  Bispham in speaking of the right of set-off says:

"This right [of set-off], although it did not originally exist at common law, was, nevertheless, so effectually introduced by statute that it now, perhaps, furnishes no ground for interference by a chancellor as an equitable right."

This view he supports by an extended citation of the cases.  And the law is settled that where one has a good defense at law, and failed to set it up when he had the opportunity, equity withholds any assistance, unless he can show that he was prevented from availing himself of the defense by fraud or accident unmixed with his own or his agent's negligence.

[2] The complainant also bases his appeal to the aid of a court of equity upon the theory that he is entitled to be exonerated from the payment of the Morse note and to be reimbursed for his payment of the note in accordance with the terms of the judgment against the Metropolitan Trust Company by the proceeds from the sale of the Heinze stock, and that this right of exoneration is recognized solely in equity.  The answer to this is that the principle of exoneration is not applicable to the facts of this case.  It is true that the 500 shares which belonged to the bank were taken without consideration to it and used to secure for Heinze the money wherewith to pay for the balance of the purchase price of the shares belonging to Heinze, and that the bank at one time may have been in a position where it would have been entitled to have had the shares of Heinze's stock belonging to it exonerated from the payment of the Morse note.  But, whatever its right to do this may have been, it ceased to possess any such right when it voluntarily paid the Morse note.  It paid that note as a volunteer, being at the time the payment was made under no compulsion to make it.  While the trust company's lien on the stock continued it could not have recovered its own stock without paying the note, but when the trust company lost its lien on the stock by the tender the bank could at once have recovered the stock without paying the Morse note.  One who is under no legal obligation or liability to pay a debt

is, if he pays it, a mere volunteer. In paying the note as a volunteer the complainant lost his right to invoke the principle of exoneration.

"The equities of contribution and exoneration arise only when the payment is made in discharge of a binding obligation." Bispham's Equity, § 332.

[3] We do not question the principle that where the owner of property pledges it for the debt of another such property occupies the position of a surety. That principle has been recognized in numerous cases. Smith v. Savin, 141 N. Y. 315, 36 N. E. 338; Le Marchant v. Moore, 150 N. Y. 209, 44 N. E. 770; Farwell v. Bank, 90 N. Y. 483. And if complainant is right in thinking that the Bank of North America at one time had the right to compel the application of the Heinze shares to the payment of the Morse note before resort was had to the shares which it owned, we cannot see that that principle can be invoked now under the existing facts. If the bank's shares at one time occupied the position of surety, that position was lost when the tender was made and refused. In Mitchell v. Roberts (C. C.) 17 Fed. 781, the court said:

"When property of any kind is mortgaged or pledged by the owner to secure the debt of another, such property occupies the position of surety, and whatever will discharge a surety will discharge such property."

The jurisdiction of a court of equity to protect equitable rights by enjoining an action at law cannot, of course, be questioned. An injunction will be granted to restrain a legal proceeding whenever an equitable title is not recognized or an equitable right not enforced in the action at law, or when exact and complete justice cannot be had between the parties, except through the remedies of the equity court. But there is nothing in the facts of this case to show that the complainant has any right for which courts of law do not afford an adequate remedy.

Decree affirmed.